CAMPBELL et al. v. SAN ANTONIO MACHINE & SUPPLY CO.

(Court of Civil Appeals of Texas. Jan. 11, 1911.)

1. APPEAL AND ERROR (§ 1040*)—HARMLESS ERROR — ERRONEOUS RULINGS ON PLEADINGS.

The error, if any, in overruling a special demurrer to allegations of the petition is harmless where the court does not submit to the jury any issue raised by the allegations.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4089–4105; Dec. Dig. § 1040.*]

2. TRESPASS TO TRY TITLE (§ 6*)—BURDEN OF PROOF.

A plaintiff in trespass to try title must show title in himself, and defendant need not produce any title where plaintiff develops none in himself.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 5–9; Dec. Dig. § 6.*]

3. BOUNDARIES (§ 37*)—EVIDENCE OF TITLE.

In trespass to try title to a strip of land plaintiff introduced in evidence deeds under which defendant claimed, which deeds described the land as a lot of a city block fronting on a designated street. According to the position of the block as indicated by monuments erected by the city after plaintiff and a remote grantee of defendant had acquired their respective tracts, the strip was a part of plaintiff's lots. The undisputed evidence did not show that the block had been correctly fixed as to its original position by the monuments, but there was evidence indicating that one of the lines of the block as it originally existed was some distance from the place fixed by the monuments. At the time the deceased husband of plaintiff purchased, the locality was in the brush, and the husband had his lots surveyed and built a fence on the lines then given him. *Held* that, though the deeds in defendant's chain of title referred to a city block, the deeds were not conclusive between the parties as to the true boundary line between their lots.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 184–194; Dec. Dig. § 37.*]

4. ADVERSE POSSESSION (§ 12*)—COLOR OF TITLE.

Deeds are unnecessary to support the 10 years' statute of limitations.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 65, 66, 387–393; Dec. Dig. § 12.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

5. ADVERSE POSSESSION (§ 43*)—TACKING POSSESSION.

Where the privity between an occupant of land and a third person was that of vendor and purchaser, the latter was entitled to the benefit of the adverse possession by the occupant.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 213–225; Dec. Dig. § 43.*]

6. EVIDENCE (§ 273*) — DECLARATIONS — POSSESSOR OF LAND.

Declarations of one in possession of land that he is claiming it as his own are admissible as giving character to his possession, but the declarations are not competent when they relate to a previous possession.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1108–1120; Dec. Dig. § 273;* Adverse Possession, Cent. Dig. § 670.]

7. TRIAL (§ 85*) — EVIDENCE — OBJECTIONS — REQUISITES.

Where a part of the testimony of a witness was admissible, an objection to the whole thereof was properly overruled.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 223–225; Dec. Dig. § 85.*]

Appeal from District Court, Bexar County; Arthur W. Seeligson, Judge.

Trespass to try title by Delia Campbell and another against the San Antonio Machine & Supply Company. From a judgment for defendant, plaintiffs appeal. Affirmed.

Geo. C. Altgelt, for appellants. Webb & Goeth, for appellee.

JAMES, C. J. The case was before this court on a former appeal (110 S. W. 770), where its nature is substantially given.

The first assignment of error is that the court erred in overruling plaintiffs' special demurrer to all that portion of defendant's second amended original petition which alleges an agreement concerning boundaries between the former owners of plaintiff's and defendant's property. The merits of the objection are immaterial, inasmuch as the court did not submit any such issue.

The charge submitted the case in the main charge on the issue of limitations, and in a requested charge the jury were further instructed "that in no event can you find for plaintiff if you should find that the eight feet of land in controversy in this suit is no part of lots one and two, but is in fact a part of lot No. 8." Thus the questions of title as evidenced by conveyances, and by limitation were the matters submitted.

The third assignment complains of the refusal of a charge instructing the jury to return a verdict for plaintiff for the land in controversy, together with a verdict for the reasonable rents of said property from January 23, 1907, to the date of trial.

Appellants' proposition is that appellants having shown the superior title under a common source, and having clearly identified the property and shown its location, both with reference to their deed and with reference to the deed under which appellee claimed, and appellee not having offered any evidence of a paper title whatever, appellants were entitled to the instruction.

In connection with this proposition we may consider the fourth assignment, which is that another requested charge should have been given as follows: "The conveyance from James & Nancy Heskins to H. B. Salliway and D. A. McAskill, as also the conveyance from Pat Stevens, H. B. Salliway, and D. A. McAskill to defendant San Antonio Machine & Supply Company, so far as dimensions and measurements, must be satisfied—that is, the land located with reference to the monuments of the city of San Antonio—because they recite the city's block system."

The defendant, The San Antonio Machine & Supply Company bought in May, 1906, from Stevens, Salliway & McAskill "lot No. 8 in block No. 10, city block 581, division 3, fronting on the east side of Walnut street between Crockett and Center streets." Salliway and McAskill bought by this description from Heskins and wife in April, 1906, "lot No. 8, block No. 10, city block 581, division 3, and being on the east side of Walnut street between Center and Crockett streets." The deed to Heskins in April, 1882, described the property as "lot No. 8 in block No. 10, fronting westward 22 varas on Walnut street, bounded northward by lots 1, 2, 3 & 4 seventy-five varas long, eastward by lot No. 9 and southward by lots 10, 11, 12 & 13." All the deeds offered were introduced by plaintiffs for the sole purpose of showing title in plaintiffs by common source of title, of the strip in question which was claimed by plaintiffs to be a part or their lots 1 and 2. According to the position of the block as indicated by monuments erected by the city after Heskins and plaintiffs purchased, the strip in question was clearly a part of lots 1 and 2. And as the two last deeds in defendant's chain of title referred to the city block, appellants' claim is that this was conclusive between these parties as to the true boundary between lots 1 and 2 on the south and lot 8 on the north. It seems to us that there would be force in this contention if the undisputed evidence had shown that the block had been correctly fixed as to its original position by the monuments which were placed there in recent years. But instead of this, there was some evidence indicating that the south line of the block as it originally existed, was some 10 or 12 feet south of where the monuments would place it.

The plaintiff Delia Campbell was the widow of J. P. Selby who bought lots 1 and 2 in February, 1882. At that time he had the lots surveyed and accordingly built a fence on the south line then given him, which fence still exists and is maintained and

claimed by plaintiff to be her south line, which fence is shown to be some 12 feet into what the monuments show to be Crockett street. The deed to Selby calls for 65 varas from said street, and to go back that distance from the fenced south line would not include the strip in controversy. The testimony shows also that the locality was in the brush in 1882 when Selby and Heskins bought, and plaintiff testified that the fence between Selby and Heskins, which left the eight feet in question on Heskins' side, was there when Heskins bought lot 8. From this it would appear that Selby himself built this fence as well as his front fence on the Crockett street side, in pursuance of a survey he had made when he bought lots 1 and 2. There is also evidence that the surveyor who gave Selby the lines in 1882 was G. Freysleben who was then, or had recently been, city engineer. It must be borne in mind that it devolved on plaintiffs to show title in themselves to the strip, and it was not necessary for defendants to produce any title, if plaintiffs developed none in themselves. Their deeds and the recitals in them, would not have the effect of showing title in plaintiffs to land not included within the latter's deed.

At the time Selby bought lots 1 and 2 and fenced same according to a survey made of the same, the locality was in the brush, and Crockett street (then known as North Center street) was not open and in use, consequently surveyors may have been mistaken in giving the Crockett street front line of lots 1 and 2, by placing the line 12 feet too far south, a mistake which would readily have appeared after the street, by its extension in that direction, had been opened and in use. The evidence in this record does not go into this matter at all, and the correctness or incorrectness of the monuments afterwards placed by the city to define the block was a matter not developed. In these circumstances we would be loth to assume that the monuments were conclusive, where there is evidence, as before stated, of an original survey placing Crockett or North Center street 12 feet further south, at which place Selby according to said survey placed his south fence, and according to which he also placed his north fence at or about the time, and where he and his wife have claimed, and she still claims, the line of Crockett street to be, and though the city monuments have been established many years, the city, so far as the evidence shows, has never taken steps to disturb Selby or his wife.

If by assignment No. 3 it is contended that no title by limitations was shown in defendants to the strip, as a matter of law, we overrule it.

By the fifth assignment of error it is claimed that as appellee did not offer any conveyance, showing that it acquired the right of Heskins and wife, it was error to charge on the statute of limitations. The statute submitted was that of 10 years, in support of which deeds are unnecessary. There was ample testimony showing privity between Heskins and wife and defendant as vendor and purchaser, entitling the latter to the benefit of adverse possession by Heskins. This practically disposes also of the point made under assignments Nos. 7 and 8.

The sixth assignment complains of the following charge given at defendants' request in effect that in no event could the jury return a verdict for plaintiffs if they should find that the eight feet in controversy in this suit is not part of lots 1 and 2, but in fact a part of lot 8. The contention is that all the evidence introduced shows that the strip is in fact a part of lots 1 and 2, city block 581. This we have already discussed.

The second assignment of error complains of the following testimony of D. A. McAskill as hearsay: "I wanted to know of old man Heskins what people had been in possession of the land, whether or not they claimed it as their own—whether or not they recognized any one else as having an interest in it. They told me they had always claimed it as their own, told me from whom they bought it, and that they had always been in possession of it, and lived upon it. They said they had built there as a home in the seventies, somewhere along there, and had always occupied it as a home; always occupied it as their home, and claimed it as their own, and claimed it as their own at the time I first got acquainted with them." We are of opinion that the greater part of the above declarations of Heskins and his wife was improper evidence. The well-established rule is that it is competent to use declarations of one in possession of land, to the effect that he is claiming it as his own, for the reason that such declarations have the effect of giving character to his possession. But we think the declarations and the possession they give character to must be concurrent; that is to say, such declarations are not competent when they do not relate to present possession, but to previous possession. Appellee cites testimony of three witnesses which went in without objection, and which it claims was to the same effect of that of McAskill. We have examined that testimony, and find that it consists of original evidence by the witnesses of what Heskins claimed, not declarations of Heskins of what he claimed, concerning his previous possession. However, the said testimony of McAskill was objected to as a whole, and a part of it was not subject to the objection, to wit, that part where he testifies that they claimed it as their own at the time he first got acquainted with them. Under a well-settled rule, it was not error, under these circumstances, to overrule the objection. Railway v. Gormley, 91 Tex. 401, 43 S. W. 877, 66 Am. St. Rep. 894.

Judgment affirmed.