STALEY v. KING BANK & MERCANTILE CO. et al.

(Court of Civil Appeals of Texas. Amarillo. Feb. 3, 1912. Rehearing Denied Feb. 16, 1912.)

1. APPEAL AND ERROR (§ 757*)—BRIEFS—SUFFICIENCY.

A brief is insufficient, where statements under assignments of error are made up of conclusions of counsel as to the facts, instead of setting forth, by excerpts from the record, matters sustaining the several propositions, as required under Court of Civil Appeals rule 31 (67 S. W. xvi).

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3092; Dec. Dig. § 757.*]

2. TRESPASS TO TRY TITLE (§ 6*)—RIGHT TO RECOVER—TITLE.

Plaintiff in trespass to try title is not entitled to recover, where it appears that he claims under a deed from intervener, and the consideration therefor, to his knowledge, has not been paid by his grantor, though payment is recited therein.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 5-9; Dec. Dig. § 6.*]

3. TRESPASS TO TRY TITLE (§ 6*)—STRENGTH OF DEFENDANT'S TITLE—MATERIALITY.

In trespass to try title, the strength of defendant's title becomes immaterial, when it appears that plaintiff has no right to the land.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 16; Dec. Dig. § 6.*]

Appeal from District Court, Wilbarger County; S. P. Huff, Judge.

Action in trespass to try title by P. C. Staley against King Bank & Mercantile Company and others; B. H. Warren and others, trustees, intervening. Judgment for interveners, and plaintiff appeals. Affirmed.

Harry Mason, Shirley Cook, and Berry & Stokes, for appellant. Cecil Storey and L. P. Bonner, for appellees.

GRAHAM, C. J. On February 2, 1910, appellant filed in the district court of Wilbarger county his petition, in form an ordinary action of trespass to try title, against the King Bank & Mercantile Company, a copartnership, as well as against the members composing said firm, for the title and possession of two lots in the town of Oklaunion, in said Wilbarger county.

On September 6, 1910, the mercantile company and its members answered by disclaimer as to title, alleged possession under a lease contract from the Oklaunion Baptist Church, and declared a willingness to attorn to the present owner of the premises, and on the same day B. H. Warren, M. L. McDaniel, and Roscoe Rainwater, as trustees for the Baptist Church of Oklaunion and for themselves, as members of that church, as well as for and in behalf of all other members thereof, intervened as parties defendant to the suit, and asserted title to the premises in the Oklaunion Baptist Church, and its possession through said mercantile company, and pleaded a general denial, not guilty, and especially pleaded the title of the Oklaunion Baptist Church, as well as the pretended title under which plaintiff claimed, alleging facts showing plaintiff's pretended title void for fraud and total failure of consideration, and prayed for title, writ of possession, and also prayed for cancellation of the plaintiff's evidences of title, and for general and special relief.

On September 15, 1910, plaintiff filed his supplemental petition, containing a general demurrer, special exceptions, a general, as well as special, denial, an attack of intervener's title, pleaded the four-year statute of limitation as against the attack on his evidences of title, and also pleaded the five-year statute of limitation.

A trial before a jury resulted in a verdict and judgment in favor of intervener, and plaintiff's motion for a new trial having been overruled, he excepted, gave notice of appeal, and brings the case to this court for reversal on numerous assignments of error.

The record shows by an agreement that R. S. Butler was the common source, and it also shows that, by warranty deed of date March 17, 1899, R. S. Butler having theretofore died, his surviving wife, A. J. Butler, and an adult son, J. F. Butler, conveyed the property in controversy to J. S. Whatley and Edward Willis, as trustees for the Baptist Church at Oklaunion, in Wilbarger county, Tex.; that, aside from said J. F. Butler, R. S. Butler left also surviving him three other children, who, on August 20, 1910, by quitclaim deed, conveyed the property in controversy to B. H. Warren, M. L. McDaniel, and Roscoe Rainwater, as trustees for the Baptist Church of Oklaunion; that on May 1, 1901, Edward Willis and J. S. Whatley, styling themselves in the deed "trustees of Oklaunion Baptist Church," conveyed, by quitclaim deed, to C. R. Staley the property in controversy. This deed is signed and acknowledged by Edward Willis and J. S. Whatley, not in a representative capacity, and there is nothing on the face of the instrument to indicate that they purported to act in a representative capacity, further than arises from the instrument showing that the grantors were trustees. A quitclaim deed from C. R. Staley to P. C. Staley to the property in controversy, of date December 11, 1901. Each of the above-mentioned deeds acknowledges on its face the payment of the purchase price in full, and the record shows that each of said instruments was promptly placed of record in Wilbarger county, Tex.

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes.

The record shows, without controversy, that at the time the deed of date May 1, 1901, was executed and delivered there was in fact no cash or other consideration paid, other than the execution of a note for the purchase price, called for on the face of the deed; the note on its face showing that it was given as purchase price for the land. This note was signed by C. R. Staley, as maker, and by P. C. Staley, either as an indorser or surety, and there is a controversy under the record as to whether or not the note was ever delivered to any person authorized to receive the same.

The record also shows, without controversy, that when P. C. Staley took the deed from C. R. Staley, of date December 11, 1901, he agreed, as a part of the purchase price, to pay off the note above mentioned; the note not then being due, and having been made payable 12 months after date. The record also shows, without controversy, that P. C. Staley knew, at the time he took the deed from C. R. Staley, that no part of the purchase price which C. R. Staley had agreed to pay for the land had ever been paid; and the record also shows, without controversy, that at the time this suit was tried said note, nor any part of it, had ever been paid, and it also shows that for some years prior to the bringing of this suit, as well as at the time the suit was filed and at the time of the trial, the Oklaunion Baptist Church was and had been in possession of the property, through tenants; it being improved property.

The record shows that at the time the title to this property was vested in Edward Willis and J. S. Whatley, as trustees of the Baptist Church at Oklaunion, on March 17, 1899, that church was made up of some 10 to 12 members, and that said Willis and Whatley were trustees thereof; that soon thereafter Willis and Whatley moved away from that section of the state, as did also many of the other persons who were then members of that church, so that but a very few of its membership still remained in that community, and that as a result thereof they maintained no pastor and kept up no active organization; that while things were in this condition, during a meeting held by a visiting pastor, at which there were some 100 persons, a resolution was passed, at which all persons present were permitted to vote, and it appears that most of them did vote, for the property to be sold at $125; that thereafter C. R. Staley caused to be prepared the deed to himself and sent it to the grantors therein, with request that they execute it, informing them that the church had authorized its execution; that when the deed was delivered to Staley, instead of paying cash, the note above mentioned was executed and left at a bank; that Staley went into possession of the property and remained in possession of it for some time; that thereafter the interveners took possession of the property, it then not being occupied, and continued their possession, as above stated.

[1] Objection is made by appellee to our considering appellant's brief, filed in this court; contention being made that the same has not been prepared in accordance with the rules governing such matters in such way as to authorize this court to consider same. We have examined appellant's brief, and find that it has not been prepared as required by the rules, and especially have rules 29 and 31 (67 S. W. xv, xvi) not been complied with, in that the order of presentation of assignments of error in said brief, as required by rule 29, has not been observed; nor have the requirements of rule 31 been observed, in that in several instances no such statement is made as shows or tends to show that the error complained of was actually committed, or, if committed, that material injury resulted therefrom. In several instances, the purported statement is made up of the conclusions of counsel as to the facts, instead of setting forth, by excerpts from the record, matters sustaining the proposition, and an inspection of the record has convinced us that in several particulars the purported statements are not such as to show an accurate and full synopsis of what the record really shows on the issue sought to be presented. Noland v. Weems, 141 S. W. 1031.

[2] Under the entire record, however, we have not found it necessary to pass on appellee's objections, for the reasons that the record shows, without any conflict, that, while the deed of May 1, 1901, acknowledges payment of purchase price of the land, it was not in fact paid, and that at the time of the trial below no part of it had been paid, nor was it tendered or offered to be paid; and, while the deed of date December 11, 1901, also acknowledges on its face the payment of the purchase money, it is shown, without any kind of contradiction in the evidence, that the grantee therein, who is appellant herein, knew that the consideration called for in the deed of date May 1, 1901, and no part of it, had been paid at the time he claims to have purchased the land; and the evidence also shows, without controversy, that, as a part consideration for the conveyance to him, of date December 11, 1901, he in fact assumed and agreed to pay the consideration mentioned in the conveyance of date May 1, 1901. The record thus showing, without any kind of conflict in the evidence, as we view the law, the rights of the parties to this controversy are controlled by the same rules of law as would govern if the facts as developed had appeared in the deeds of date May 1, 1901, and December 11, 1901, respectively; and, if we are correct in this contention, there can be no question but that no other judgment could

properly have been rendered than the one appealed from. White v. Cole, 87 Tex. 500, 29 S. W. 759.

[3] Believing that the record conclusively shows that appellant had no title to the land in controversy, and that it also shows that appellees were in possession thereof, it follows that an inquiry as to the strength or validity of appellee's title becomes immaterial and unnecessary to a proper disposition of the case. Jones v. Lee, 41 S. W. 195.

None of appellant's assignments of error are based on the admission or the introduction of the uncontradicted evidence above mentioned; in fact, the deeds of date May 1, 1901, and December 11, 1901, were introduced by appellant, and he himself testified without contradiction to the facts which show that he had notice that appellees had never paid for the land. It therefore becomes unimportant, we think, to inquire into the questions raised in appellant's assignments of error, and they will therefore all be overruled.

Finding no material error in the record, and being convinced that the only judgment that could be sustained thereby was rendered in the trial court, the judgment of the trial court will be in all things affirmed; and it is so ordered.

HALL, J., not sitting.