## NIENDORFF et al. v. WOOD et al.
### No. 5249.

Court of Civil Appeals of Texas. Amarillo.
Feb. 10, 1941.

Rehearing Denied March 17, 1941.

W. J. Rutledge, Jr., of Dallas, for appellants.

G. E. Lockhart, W. R. Porter, Nelson & Brown, and Geo. W. McCleskey, all of Lubbock, for appellees.

STOKES, Justice.

This suit in the form of trespass to try title was filed November 16, 1936, by appellants, Mary Starr Niendorff, joined pro forma by her husband, J. H. Niendorff, and Ruth Starr Baker, a feme sole, against appellees, R. C. Wood and Marvin Wood. The original petition described by metes and bounds the land in controversy as being a tract of 56.4 acres off of the extreme north side of Section 49. On October 10, 1938, appellants filed their first amended original petition, upon which the case was tried and in which the 56.4 acres was described only by field notes, and in this description no reference is made to any section line or other official object by which the 56.4 acre tract in controversy can be located from the record. The record shows that Section 40 lies immediately north of Section 49 and the official map attached to the statement of facts shows that the two sections have a common boundary, the south line of Section 40 constituting the north line of Section 49. Appellants state in their brief that the 56.4 acre tract lies either within Section 49 or within Section 40, or partly in each section; or possibly between the north line of Section 49 and the south line of Section 40. It is further admitted in the brief that the parties do not know the true location of the division line between the two sections, which we presume refers to the actual location on the ground.

It was stipulated at the trial that appellant, Mary Starr Niendorff, holds the record title to Section 49, and that appellees hold the record title to Section 40, and that they and those under whom they claim have been the owners of the respective sections for many years. The only question presented by the record and briefs pertains to the ten years' statute of limita-

tion in respect to the 56.4 acres in controversy and it becomes our duty to determine whether or not appellants, under the facts shown by the record, have perfected a title thereto by adverse possession under the provisions of Article 5510, R.C.S. 1925, regardless of what may be the condition of the record title to any portion of the land involved.

A jury was impaneled to try the case but at the close of appellants' testimony, upon motion of appellees, the trial judge instructed the jury to return a verdict in favor of appellees and when such verdict was returned the court entered judgment in their favor, decreeing that appellants take nothing by their suit. Their motion for a new trial being overruled, appellants gave notice of appeal and have perfected an appeal to this court.

The record shows that, beginning with May 26, 1902, Clara C. Starr leased Section 49, consisting of 640 acres, to Tahoka Cattle Company for one year and that she and her successors in title leased that section to various lessees continuously until October 24, 1930, covering a period of twenty-eight years. These leases were all in writing and were introduced in evidence. Each of them describes the leased premises as being Section 49, consisting of 640 acres. The testimony shows that sometime prior to 1911 a fence was erected by two men by the names of Robinson and Lupton but it is not shown by whose authority they erected it nor that the then owner of either section authorized its erection. The exact location of this fence with reference to any of the section lines is not shown by the record. About January 20, 1927, appellees, who owned Section 40, caused this fence to be removed and erected another fence a distance of some 168 varas south of where it was located. The strip of land between the location of the old fence and the present location of the new fence constitutes the strip of land in controversy.

As we have said, there is no controversy over the question of the record title to either of the two sections of land. The controversy pertains only to the question of whether or not appellants, who own Section 49, have title by adverse possession under the provisions of Art. 5510, R.C.S.1925, commonly known as the ten years' statute of limitation, of the strip of 56.4 acres lying between the locations of the respective fences. Appellants contend that they, and the lessees of their predecessors in title of Section 49, having had possession of the tract in controversy from 1902 to January 20, 1927, had perfected title by adverse possession and limitation to the strip of land in controversy, whether it constitutes a portion of Section 40 or a portion of Section 49, the section owned by them. At least, they say an issue was presented on this question which they were entitled to have determined by the jury and that the trial court erred, therefore, in giving to the jury a peremptory instruction to return a verdict in favor of appellees.

Appellants were the plaintiffs in the trial court and they must recover, if at all, upon the strength of their own title and not upon the weakness of the title of their adversaries. Patrick v. Barnes, Tex.Civ.App., 163 S.W. 408. Whether the basis of their title is the record, or limitation and adverse possession, they must show title in themselves and it was not necessary for appellees to proceed or produce any title whatever unless appellants had shown by the testimony that the title upon which they depended was in them. Campbell v. San Antonio Machine Co., Tex.Civ.App., 133 S.W. 750; Griffin v. Ray, Tex.Civ.App., 135 S.W. 248; Reese v. Cobb, 105 Tex. 399, 150 S.W. 887. The rule is well established in this state that in trespass to try title, the strength of the defendant's title is immaterial when it appears that the plaintiff has no right to the land. Staley v. King Bank & Mercantile Co., Tex.Civ.App., 144 S.W. 308; Houston Oil Co. v. Miller & Vidor Lumber Co., Tex. Civ.App., 178 S.W. 830.

Appellants contend that they met these requirements and discharged the burden of proving title in themselves by limitation and adverse possession when they showed that they and their predecessors in title had, over a period of twenty-five years, been the owners of Section 49 and that the strip of land in controversy was possessed, occupied and used by their lessees under the leases above mentioned. They assert that this is true whether the strip of land in controversy is located on Section 49 or Section 40. It may be well to observe just here that, regardless of where the strip of land in controversy is located, appellants do not show by the testimony or otherwise that they have been deprived of any land to which they are entitled because the record is devoid of any showing that the new fence erected by appellees is not on the north line of appel-

lants' Section 49. If the strip in controversy is actually located on the south side of Section 40, or constitutes an independent area lying between the two sections, appellants have failed in their efforts to prove a title by limitation and adverse possession because the only right thereto which they have shown or indeed which is asserted by them is such as they claim to have acquired through their lessees and by use and occupancy of their lessees of the strip of land in controversy in connection with the leases executed by appellants and their predecessors in title over the period of twenty-five years from 1902 to 1927. Each of the leases demised to the respective lessees only Section 49, consisting of 640 acres. At no time did appellants or any of the former owners of Section 49 include in any lease executed by them the strip of land in controversy if it is located elsewhere than on Section 49. The record does not show that any person who purported to be the owner of Section 49 built or authorized the building of the old fence nor that any of them authorized any lessee to possess, occupy or use any land other than that which was included within the boundaries of Section 49. The owner of land is deemed in law to have possession only to the extent of the right of possession of his tenant under the terms of the lease contract when the owner claims title by virtue of the possession of the tenant. Williams v. Fuerstenberg, Tex.Com.App., 23 S.W.2d 305.

The cited case is strikingly similar in all of its aspects to the instant case and Judge Leddy, speaking for the Commission of Appeals, quoted with approval from a Kentucky case, West v. Price's Heirs, 2 J.J.Marsh. 380, as follows: "But if a man give authority to a tenant to take possession of a certain close or tract of land, and the tenant enters on other lands not embraced by the authority, such entry cannot invest possession of the land entered upon, in the person, granting the authority. In reference to such an entry on land, there is no connexion between landlord and tenant. The power given, is disengaged; the entry, therefore, is merely the tortious act of the tenant."

■■ Adverse possession, to ripen into title, must be such as would expose the possessor to some liability for what was done by him or under his authority during the limitation period. It could not be said that any act or trespass committed by any of the lessees who held Section 49 under the various leases executed by appellants' predecessors in title during the twenty-five years from 1902 to 1927 subjected the lessors or any of them to liability or exposed them to a suit for damages or otherwise, because the leases specifically described Section 49 and gave to the lessees no right or authority to enter upon any land not enclosed within its boundaries. If the lessees committed trespasses on other land, therefore, such trespasses were their own acts and constituted tortious conduct for which they alone would be liable. Holmes v. Turners Falls Lumber Co., 150 Mass. 535, 23 N.E. 305, 6 L.R.A. 283; West v. Price's Heirs, 2 J.J.Marsh., Ky., 380; Bayne v. Brown, 60 Or. 110, 118 P. 282; Capps v. Merrifield, 227 Mich. 194, 198 N.W. 918; Deregibus v. Silberman Furniture Co., 121 Conn. 633, 186 A. 553, 105 A.L.R. 1183.

■■ Under the law, as it is firmly established by the above authorities and many others that could be cited, we are forced to the conclusion that appellants were not entitled to recover upon the theory contended for by them. Assuming that the strip of land in controversy is either a portion of Section 40, the record title to which is owned by appellees, or an independent strip lying between the two sections, the mere fact that lessees and tenants of appellants and their predecessors in title occupied it, used it and had possession of it over the period of twenty-five years did not give to appellants any rights whatever and did not perfect in them, as they contend, a title thereto by adverse possession under the provisions of Art. 5510, R.C.S. 1925. Appellants having failed to show that the strip of land was a portion of their Section 49 and, therefore, included in the leases, they were not entitled to recover upon any theory of the case and it must follow that the trial court was correct in giving to the jury the peremptory instruction and entering judgment in favor of appellees.

The judgment of the court below will be affirmed.