LESTER v. HUTSON. (No. 538.)

(Court of Civil Appeals of Texas. Amarillo. April 4, 1914. Rehearing Denied May 16, 1914. Second Motion for Rehearing Denied May 30, 1914.)

1. PLEADING (§ 111*)—PLEA OF PRIVILEGE—EVIDENCE.

Upon a claim of privilege it is not necessary to introduce evidence as to a fact as to residence which is admitted by the pleadings of both parties.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 234–236; Dec. Dig. § 111.*]

2. PLEADING (§ 49*)—NATURE OF ACTION—DETERMINATION.

The designation of an action as one to remove a cloud does not necessarily make it such, but the character of the suit is to be determined by the facts alleged therein.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 107–111; Dec. Dig. § 49.*]

3. TRESPASS TO TRY TITLE (§ 32*)—PLEADING—NATURE OF ACTION.

A petition alleged that defendant contracted to convey land to plaintiff's intestate, the contract to be good until September 12, 1907; that on that date or subsequent thereto the parties agreed to sell off part of the land and apply the proceeds on the contract, the residue of the land to be the property of intestate; that enough of the land was sold and retained by defendant to satisfy intestate's obligation; and that he then had the equitable title, while the legal title was in defendant and was a cloud on his title, and there was a prayer for a decree quieting title and for the removal of incumbrances. *Held*, that the suit was not a suit

for specific performance, but a suit in the nature of trespass to try title founded on an equitable title to the land.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 39–41; Dec. Dig. § 32.*]

**4. VENUE (§ 5*)—TRESPASS TO TRY TITLE.**

The venue of trespass to try title is in the county where the land lies.

[Ed. Note.—For other cases, see Venue, Cent. Dig. §§ 4–11; Dec. Dig. § 5.*]

**5. TRESPASS TO TRY TITLE (§ 1*) — NATURE AND SCOPE OF REMEDY.**

An action involving title to land, whatever its form, or a suit to recover title to land, whether upon legal or equitable ground, is in effect an action of trespass to try title.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 1, 2; Dec. Dig. § 1.*

For other definitions, see Words and Phrases, vol. 8, p. 7094.]

**6. VENDOR AND PURCHASER (§ 16*) — CONSTRUCTION—EXECUTORY OR EXECUTED CONTRACT.**

Plaintiff's intestate and defendant entered into a written agreement, signed by defendant alone, whereby he was to sell to intestate certain sections of land upon payment of a certain amount, the agreement to hold good until September 12, 1907. The intestate thereafter and after such date continued in the possession and control of such land claiming it as his own and making valuable improvements thereon, and during his life the defendant did not dispute his equities, but recognized the contract as in force, and under a subsequent agreement defendant was to hold title, and both were to endeavor to sell the land, defendant to make deeds and apply the proceeds to the discharge of his indebtedness to his vendor, and that when such indebtedness was paid the remaining land was to be the property of intestate. *Held*, that while the rule is that when the offer is definite enough to the acceptor his mere acceptance promises nothing and is not binding for want of mutuality, yet in this case intestate's acceptance obliged him to pay the agreed price so as to furnish a consideration and made a binding executed contract.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 17, 20; Dec. Dig. § 16.*]

**7. VENDOR AND PURCHASER (§ 187*) — PERFORMANCE OF CONTRACT—TIME—WAIVER.**

In such case the fact that after that time defendant recognized the contract as still valid and subsisting and permitted intestate to remain in possession and improve it under a claim of title and right, and conveyed lands to pay off an obligation mentioned in the contract and applied the proceeds thereunder, waived the time limit.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 121, 374, 375; Dec. Dig. § 187.*]

**8. VENDOR AND PURCHASER (§ 16*) — CONTRACTS—ACCEPTANCE.**

Under such contract, whether regarded as an agreement to sell, an option to intestate until September 12, 1907, or as a contract of sale conditioned upon compliance with its terms before that date, the entry of intestate claiming under the contract and his improvements thereon, recognized by defendant, amounted to an acceptance under which his equity attached.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 17, 20; Dec. Dig. § 16.*]

**9. CONTRACTS (§ 237*)—AGREEMENT FOR EXTENSION OF TIME—CONSIDERATION.**

In such case, where the agreement was left open after the time fixed for performance,

and the plaintiff's intestate thereafter signified acceptance, and was recognized as a purchaser under the original agreement, a new agreement that defendant should sell part of the land and apply the proceeds to his own indebtedness on the land, thereby making himself a trustee to carry out the first agreement, was supported by consideration founded on the mutual promises to pay for and convey the land.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1119–1122; Dec. Dig. § 237.*]

**10. TRUSTS (§§ 17, 18*) — EXPRESS TRUST — PAROL EVIDENCE.**

An agreement whereby one of the parties constitutes himself a trustee for the specific purpose of carrying out an agreement for the sale of an interest in land is not within the statute of frauds, but may be established by parol.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 15–24; Dec. Dig. §§ 17, 18.*]

**11. VENDOR AND PURCHASER (§ 16*)—PERFORMANCE OF CONTRACT—ACCEPTANCE AFTER TIME LIMIT.**

When a vendor agrees to convey land upon the doing of a particular act, such as acceptance within a certain time, the relation of vendor and purchaser does not exist until acceptance; but if the vendor continues his offer which is accepted, and he thereafter deals with the purchaser under the terms of the offer, the contract is made, even though the acceptance is not within the time limit.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 17, 20; Dec. Dig. § 16.*]

**12. EVIDENCE (§ 273*) — DECLARATIONS OF PERSON IN POSSESSION AS TO TITLE OR POSSESSION—SELF-SERVING DECLARATIONS.**

In an action in the nature of trespass to try title, founded on the equitable title of plaintiff's intestate, where the issue was whether he held possession as owner or as defendant's tenant, the fact and nature of his possession and his acts with reference thereto, such as improvements, etc., his effort to borrow money upon the security of the land, and his declarations with reference thereto, though in their nature self-serving and hearsay, were admissible under the exception to the rule of hearsay and self-serving declarations as to declarations made while in possession of land as explanatory thereof.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1108–1120; Dec. Dig. § 273.*]

**13. EXCEPTIONS, BILL OF (§ 13*) — REVIEW — EXCEPTIONS — EVIDENCE ADMISSIBLE IN PART.**

A bill of exceptions to the admission of evidence, not separating the inadmissible from the admissible evidence, will be overruled.

[Ed. Note.—For other cases, see Exceptions, Bill of, Cent. Dig. § 13; Dec. Dig. § 13.*]

**14. EVIDENCE (§ 273*)—DECLARATION OF PERSON IN POSSESSION AS TO TITLE OR POSSESSION—SOURCE OF TITLE.**

In an action in the nature of trespass to try title, where the issue was whether possession of the plaintiff's intestate was that of owner or tenant of defendant, the intestate's declarations in the nature of hearsay and self-serving declarations as to his purchase of the land from defendant, the amount due, the agreement under which he was to keep it and pay the balance, were not admissible to show equitable title in her intestate.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1108–1120; Dec. Dig. § 273.*]

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

**15. WITNESSES (§ 178*)—COMPETENCY—TESTIMONY AGAINST REPRESENTATIVE OF DECEDENT.**

Under Rev. St. 1911, art. 3690, making a witness incompetent to testify to personal transactions with a decedent except when called to testify thereto by the opposite party, when the deposition of such opposite party is taken by the representative of a decedent, the other party may cross-examine the witness and bring out matters favorable to his interest, and such testimony will not be excluded as incompetent if offered by him.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 722–725; Dec. Dig. § 178.*]

**16. WITNESSES (§ 178*)—COMPETENCY—TESTIMONY AGAINST REPRESENTATIVE OF DECEDENT—OTHER MATTERS.**

Under such statute, the party so called and whose deposition has been taken cannot testify to matters not testified to or inquired about in the deposition, since that would allow him to fully explain the transaction when in the first instance he could not or failed to do so.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 722–725; Dec. Dig. § 178.*]

**17. TRESPASS TO TRY TITLE (§ 35*)—EVIDENCE—PAYMENT.**

In an action to recover an interest in land in the nature of an action of trespass to try title, where the fact that defendant had paid the cash for the land in question was not controverted, evidence to that effect was immaterial.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 50–52; Dec. Dig. § 35.*]

**18. WITNESSES (§ 159*)—TRANSACTIONS WITH DECEDENT—INTEREST IN LAND.**

In an action to recover an interest in land in the nature of trespass to try title, where the question was whether there was an agreement that they should sell the land and apply the proceeds upon the obligation of plaintiff's intestate, testimony on the part of the defendant that there was no such agreement subsequent to the time fixed for performance of the original agreement was based upon a transaction between deceased and defendant, and hence was inadmissible.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 629, 664, 666–669, 671–682; Dec. Dig. § 159.*]

**19. TRESPASS TO TRY TITLE (§ 35*)—EVIDENCE—POSSESSION.**

In an action to recover an interest in land under a written agreement, where plaintiff relied upon her intestate's possession as an acceptance of defendant's offer whereby his equity attached, and where it appeared that he had acted for a land company, evidence, that before defendant had purchased the land in question intestate or his company was in possession, was admissible.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 50–52; Dec. Dig. § 35.*]

**20. WITNESSES (§ 159*)—COMPETENCY—TRANSACTION WITH DECEDENT.**

Such testimony was not subject to the objection that it was a transaction between defendant and a deceased person.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 629, 664, 666–669, 671–682; Dec. Dig. § 159.*]

**21. WITNESSES (§ 159*)—COMPETENCY—TRANSACTION WITH DECEDENT.**

In such action, testimony of defendant that he had been in possession of part of the land since his purchase and was then in posses-

sion and that he had leased it, in view of plaintiff's reliance upon possession of her intestate, was not incompetent, since a party may testify to what he himself has done under a contract with a decedent.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 629, 664, 666–669, 671–682; Dec. Dig. § 159.*]

**22. TRESPASS TO TRY TITLE (§ 39*) — EVIDENCE.**

In an action to recover an interest in land, where plaintiff relied upon acceptance of an agreement with defendant and her intestate's possession thereunder, and where it appeared that intestate had declared that he was defendant's tenant, defendant's evidence that his purpose in borrowing the money to pay off notes on the land to intestate's land company was to prevent threatened suit by intestate was admissible, especially where such testimony was not offered by plaintiff with the rest of defendant's deposition.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 54; Dec. Dig. § 39.*]

**23. WITNESSES (§ 178*)—COMPETENCY—TRANSACTION WITH DECEDENT.**

Where a witness is called by an administrator, his disqualification to testify against decedent is waived, and his testimony, elicited by deposition or otherwise, is admissible.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 722–725; Dec. Dig. § 178.*]

**24. EVIDENCE (§ 181*)—BEST AND SECONDARY EVIDENCE—PREDICATE.**

In an action to recover an interest in land, the testimony of the addressee of a letter from plaintiff's intestate that he thought that the letter read to him was a copy of the original which he thought he had and which if found he would attach to his deposition, but which was not done, did not lay a proper predicate for the introduction of the copy.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 600; Dec. Dig. § 181.*]

**25. EVIDENCE (§ 368*)—PRODUCTION OF DOCUMENT—NOTICE—PARTY.**

In such case, where the original was in the addressee's hands, notice to produce to defendant, who had no right of control over it, was not sufficient to obtain it for use at the trial.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 444, 1540–1558; Dec. Dig. § 368.*]

**26. EVIDENCE (§ 273*)—COMPETENCY—TRANSACTIONS WITH DECEDENT.**

In such case, self-serving and hearsay declarations by plaintiff's intestate to the addressee were incompetent as against the defendant.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1108–1120; Dec. Dig. § 273.*]

**27. APPEAL AND ERROR (§ 501*) — NECESSITY OF EXCEPTIONS—INSTRUCTION.**

Under Acts 33d Leg. c. 59, relating to the submission of instructions to counsel before they are given and requiring exception to the charge of the court before given, *held* that, where there is no exception in the record to the charge of the court before it was read to the jury or to its refusal of special requested charges, the assignments of error therein would not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2300–2305; Dec. Dig. § 501.*]

**28. JUDGMENT (§ 256*)—CONFORMITY TO VERDICT.**

In an action to recover land in the nature of trespass to try title, where the jury found for the plaintiff for the quieting of her title and for a sum of money, judgment based upon the

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

findings of the court as to incumbrances, not included in the verdict, was improper.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 446–454; Dec. Dig. § 256.*]

Appeal from District Court, Deaf Smith County; D. B. Hill, Judge.

Action by Mrs. Kathryn Hutson, administratrix with the will annexed of John Hutson, deceased, against L. T. Lester. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Reeder & Dooley and A. S. Rollins, all of Amarillo, and G. W. Barcus, of Weatherford, for appellant. Madden, Trulove & Kimbrough, of Amarillo, and Carl Gilliland, of Hereford, for appellee.

HUFF, C. J. The appellee, Mrs. Kathryn Hutson, as administratrix with the will annexed of John Hutson, deceased, brought suit against appellant, L. T. Lester, in the district court of Deaf Smith county, Tex. It is alleged in the petition that both plaintiff and defendant reside in Randall county, Tex. The land described in the petition is situated partly in Randall county and partly in Deaf Smith county, giving the situation as to each tract; that Mrs. Kathryn Hutson is the widow of John Hutson, who died on the 14th day of January, 1911. She alleges: That on or about the 8th day of January 1907, L. T. Lester, for a valuable consideration then paid to him by John Hutson, executed and delivered to Hutson, then living but now deceased, a certain contract in writing as follows:

"Canyon, Texas, January 8, 1907. "The State of Texas, County of Randall. I, L. T. Lester, agree to sell to John Hutson, or order, section 11, Blk. K–14, B. S. & F., Cert. No. 127, 15 Blk. K–14, J. Gibson, Cert. No. 129, 17 Blk. K–14, B. S. & F., Cert. No. 1–51, all these sections are located in Deaf Smith county, Texas. Also section 11, Blk. one (1), T. T. R. R. Co., Cert. No. 54, also section 12, Blk. one (1), T. T. R. R. Co., Cert. 54, both situated in Randall county, Texas. Upon the said John Hutson paying me the sum of $8,-106.67, and balance due on said sections with accrued interest and other expenses, with 8 per cent. interest from date. This agreement to hold good until September 12, 1907. Witness my hand this the 8th day of January, 1907.
"L. T. Lester."

That by said contract Lester agreed and promised and became bound and obligated to convey to Hutson the lands therein described. That said conveyance was to be made upon the payment by the said Hutson to the said Lester of the sum of $8,106.67, with 8 per cent. interest and the payment of the balance due by said Lester on said sections with accrued interest and other expenses. That the balance due as referred to in said contract was the balance of the purchase money on said five sections which the Cedar Valley Land & Cattle Company had sold and conveyed to Lester on or about the 12th day of September, 1906, for the price of $24,320, of which plaintiff is informed and believes that

Lester paid $8,106.67, and for the remainder gave his two promissory notes, each for $8,-106.67, and that said two notes constituted the balance due referred to in the contract of January 8, 1907. That the stipulation in said contract that same should hold good until September 12, 1907, was not intended to be of the essence of said contract, and that after September 12, 1907, Hutson continued in possession and control and occupancy of said lands, claiming same as his own and made valuable improvements thereon. That he offered same for sale and made numerous efforts to sell same, and so continued down to the date of his death in the early part of 1911. That said Lester during the lifetime of Hutson did not at any time dispute the ownership of Hutson or his equities in said land, or claim that said contract was terminated or ended, but at all times recognized said contract as being in force, and from time to time waived the limitation of time mentioned in said contract, continued the same in force, and was recognizing said contract at and after the death of Hutson.

That some time either about September 12, 1907, or subsequent thereto, the exact date not being known to plaintiff, but well known to Lester, said Hutson and said Lester made a further contract and agreement as supplement to and modification of said contract of January 8, 1907, and in accordance with the understanding between them at that time, the exact terms of which, and whether written or oral, plaintiff does not know, but is informed and believes that said contract provided in substance that Lester should continue to hold the title to said land and that said Hutson and Lester would endeavor to sell said land; that, upon sales, Lester should make deeds and receive the proceeds and apply same to the discharge of his indebtedness on said two notes to the Cedar Valley Land & Cattle Company, and then reimburse himself the amount paid by him to said company as first payment on said land, being $8,106.67; and that when these amounts were paid, either from the sales of land or by payments made by Hutson, the lands remaining unsold were to belong to Hutson under the terms of said contract of January 8, 1907. That under this agreement Hutson continued in possession of said lands under claim of ownership, erected improvements thereon, offered same for sale, rented same for pasture purposes, and had full control thereof, and so continued, with the knowledge and consent of Lester as long as said Hutson lived, and was in possession and control of all of said lands remaining unsold at the time of his death. That during all of said times it was understood between Lester and Hutson that Lester held the title to said lands in trust for said Hutson. That pursuant to said understanding and agreement Lester sold to various parties the following portions of said

land, to wit: The S. ½ of survey 15, in block K–14, Cert. 129, J. H. Gibson, Deaf Smith county, for the sum of $6,720, of which $3,520 was paid in cash and two notes for $1,600 each were given Lester, which he afterwards collected. The N. ½ of said section 15, for the sum of $6,080, of which $3,520 was paid in cash, the remainder represented by two promissory notes, each for $1,280 which Lester subsequently collected. The W. ½ of section 17, block K–14, Deaf Smith county, for $7,100, which was either paid in cash or part cash and part notes, which were afterwards collected by Lester. The remainder of said section 17, for the sum of $2,260, and which was paid in cash or part cash and part notes, which have since been collected by Lester. The S. ½ of survey No. 12, block 1, T. T. R. R. Co., Randall county, Tex., at and for the price of $5,120 cash. That the remainder of said land remained unsold and is still standing in the name of Lester, which title he holds in trust for the estate of Hutson. That the amounts realized from the sales mentioned, together with numerous and sundry payments that Hutson made from time to time, were more than sufficient to pay off the notes of said Cedar Valley Land & Cattle Company, and to more than repay said Lester for the amounts he had paid on said lands, and to pay him all interest due him under said contract of January, 1907, and leave the remaining 2½ sections of land that were unsold at the time of Hutson's death fully paid for and belonging to Hutson, but plaintiff alleges that Lester failed to apply all of the proceeds of said sales to the discharge of said indebtedness, but only a part was so applied. That if such proceeds be properly applied they will discharge all indebtedness against said 5 sections and leave said 2½ sections as the property of Hutson.

That in October, 1909, Lester was still recognizing the rights of Hutson under said contract, and caused a statement to be furnished to Hutson purporting to show the indebtedness against said land, etc., and at or about said time settlement between Lester and Hutson was attempted and a tentative agreement made for such settlement, but the particulars thereof are unknown to plaintiff, and for some reason said settlement was not consummated, but Hutson continued in possession of the unsold land and continued to exercise ownership over the same with Lester's knowledge. That again about August, 1910, another settlement was pending between Lester and Hutson with respect to said land, the details and particulars of which were unknown to plaintiff, which also failed of consummation. That afterwards Hutson continued in possession of said land. That since Hutson's death Lester has set up claim to said lands which constitutes a cloud on plaintiff's title, which interferes with the sale thereof and depreciates it in value.

That Lester had failed to apply the proceeds of the sales of said lands to the payment of all indebtedness to the Cedar Valley Land & Cattle Company, but only so applied a small portion thereof. That some time in the autumn of 1910 said company demanded payment of its notes. Said Lester was unable or unwilling to pay off said notes, and Hutson, seeing the necessity of having the notes paid, first endeavored himself, with Lester's consent, to borrow the necessary money; but, being unable to do so, Hutson finally agreed that Lester might borrow such money and place a mortgage on the land, and Lester did so, but made the notes and mortgages for amounts much greater than any balance due by him by said Hutson. Plaintiff says that it is claimed by defendant that at or about the time said mortgage was placed on said lands Hutson signed an acknowledgment of tenancy, to the effect that he was a tenant of Lester and occupied said lands as such. Plaintiff denies the execution of any such acknowledgment, but, if such was the case, Hutson only signed such acknowledgment because said Lester was unable to secure said loan without such an acknowledgment, and said acknowledgment was not intended to affect the rights of Hutson and Lester as between themselves.

Plaintiff's prayer is that she may have a decree quieting her title to said 2½ sections of land remaining unsold, requiring Lester to remove incumbrances he has placed thereon, or to indemnify plaintiff against loss thereby, to enter a decree vesting the complete legal and equitable title to said lands in plaintiff, and requiring Lester to pass proper deeds thereto, and completely perfecting and quieting the title of said land, and for an accounting between the parties.

Appellant, by first assignment of error, complains at the action of the court in overruling his plea of privilege to be sued in the county of Randall. The appellant filed his plea of privilege in due order and in the usual form to the effect that he was a resident of Randall county and did not reside in Deaf Smith county, etc.

[1, 2] If the appellee's petition on its face shows that it was a suit alone for specific performance and for an accounting against appellant, then we think the court should have changed the venue to Randall county. It, in our judgment, was not necessary to introduce evidence of a fact which by the pleadings of both parties was admitted; that is, that Lester resided in Randall county. Ragland v. Ins. Co., 157 S. W. 1187; Gogan v. Morrision, 163 S. W. 119. It therefore becomes our duty to determine whether the suit is one, as shown by the allegations, for the recovery of the land by the equitable owner and to remove a cloud from her title. It may be conceded that the designation of the action as one to remove a cloud does not necessarily make it such, but that the character of the suit must be determined from the facts alleged therein. Cavin v. Hill, 83

Tex. 73, 18 S. W. 323; Garrison v. Stokes, 151 S. W. 898.

[3-5] The substance of the allegation is that appellant entered into a written contract to convey five sections of land to Hutson, which agreement was to hold good until September 12, 1907; that on that date, or subsequent thereto, an agreement was entered into between the parties thereto by which appellant and Hutson were to sell off part of the land, the proceeds of which were to be applied on the contract and the residue of the land should be the property of Hutson; that enough of said land was sold and retained by appellant to satisfy the obligation of Hutson under the contract; and that appellant had the legal title in his name, while the equitable title was in the estate of Hutson; and that such legal title was a cloud on Hutson's title. There is a prayer for a decree quieting title, to remove incumbrances, and for a decree vesting complete legal and equitable title in appellee. If Hutson had paid for this land under the contract, then we think the equitable title was in him and he could sue to recover the land and remove as a cloud the apparent title held by appellant. Secrest v. Jones, 21 Tex. 121. Under the allegation there was nothing left for Hutson to do in order to vest him with title. He had complied with the terms of the contract as alleged, and by the sale of other lands and the appropriation of the proceeds thereof Lester had performed the contract to the extent of vesting Hutson with title to the land. The fact that he had not made the deed did not leave it executory as to the title. That was vested as between the parties to the contract by virtue thereof and the performance by both parties thereunder. A deed from Lester to Hutson would have only evidenced the title; it vested by virtue of the contract and the performance thereunder. Kirby v. Cartwright, 48 Tex. Civ. App. 8, 106 S. W. 742; Wright v. Thompson, 14 Tex. 558. An action involving a title to land, whatever its form, is in effect an action of trespass to try title. Grimes v. Hobson, 46 Tex. 416; Johnson v. Foster, 34 S. W. 821. A suit, the object of which is to recover title to land, whether upon legal or equitable grounds, is an action of trespass to try title. Johnson v. Bryan, 62 Tex. 623. In the case of Thompson v. Locke, 66 Tex. 383, 1 S. W. 112, discussing the venue statute, the court therein said:

"The evident intention was to provide the venue in all actions in which the title to the land was in controversy."

And further discussing the action of trespass to try title under our statutes, the Supreme Court then said:

"The action of trespass to try title serves the purposes of an action of ejectment in this state; but in it the question of title, as well as the right to the possession, is determined and as fully settled as it could be by a suit to quiet title. Hence seldom, if ever, could a suit to quiet title, technically considered, be here necessary. The suits contemplated must be suits of broader purpose, embracing suits founded even on equitable titles instituted to remove cloud from such title, and suits necessary, as occasion may require it, to enable the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right."

The petition in this case certainly alleges title in the estate of Hutson. In alleging a contract to convey the payment of the purchase money, according to the terms of the contract, claim of title for years thereunder, possession, improvements, and the like, and that there is a cloud upon such title by the same standing in the name of appellant. This, as we interpret it, is not a suit for specific performance, but the allegation is that the contract was performed so that equitable title was vested in appellee and would be a perfect title but for the legal title standing in the name of appellant which is only a cloud and no title in fact. We think the trial court was correct in overruling appellant's plea of privileges.

[6] The appellant's second assignment is that the court erred in overruling his general exception. Under this assignment the proposition is presented that, in order to maintain an action to remove a cloud, it was necessary for appellee to show a good and valid title to the land, either legal or equitable. As subsidiary propositions thereto, appellant presents that the contract was an option contract and conveys no legal or equitable estate until accepted by the optionee and fully complied with and in the time specified; that appellant does not allege an acceptance and performance of the contract of January 8, 1907, but affirmatively alleges a subsequent agreement after September 12, 1907, which agreement was invalid because it was without consideration past, present, or prospective; that it is unenforceable under the statute of frauds; and that it was lacking in mutuality both as to right and remedy. The contract, as set out in the pleadings, is that Lester agrees to sell to John Hutson the five sections of land upon the said John Hutson paying $8,106.67, the balance due on said sections with accrued interest and other expenses with eight per cent. interest from date; this agreement to hold good until September, 12, 1907. This agreement is signed by Lester alone, but it is an agreement to sell. It does not have the form of a mere proposition, but is more nearly a conditional contract to convey and may be compared to a bond for title. If, however, it shall be treated as a mere proposition made by Lester to be accepted by Hutson, the facts alleged make it mutual and binding. It is alleged that Lester, for a valuable consideration then paid, executed and delivered to Hutson the contract in writing; that thereafter and after the 12th of September, 1907, Hutson continued in the possession, control, occupancy, and ownership of said lands, claiming the same as his own, and made valuable improvements thereon, and that, during the lifetime of Hutson, Lester did not dispute the equities of Hut-

son or make any claim that the contract was terminated or ended, but recognized that the contract was in force and waived the limitation of time; that on September 12, 1907, or subsequent thereto, they made another agreement, whether verbal or in writing appellee did not know; that Lester was to continue to hold the title to the land; and that each should endeavor to sell said land. Lester should make the deeds, receive the proceeds, and apply the same to the discharge of the indebtedness of Lester to his vendor and indemnify him in the first payment, and when these amounts were paid the land remaining unsold was to remain the property of Hutson, etc.

The general rule is that, when the offer is definite enough to the acceptor the acceptor by merely accepting has really promised nothing, then it is not binding for the want of mutuality; but, where the acceptance does really impose an obligation on the acceptor, then a consideration is present and a binding contract results. In this case, by entering upon the land and making valuable improvements thereon, Hutson bound himself under the contract to pay the sum of money therein named, and by so doing Lester could have enforced the same by suit or otherwise, and hence we think the contract was mutual and binding. 9 Cyc. 256, 260, 327; Taber v. Dallas County, 101 Tex. 241, 106 S. W. 332. The fact that acceptance is not alleged in terms we do not think renders the contract unenforceable on that ground alone. One may accept by acts as well as by words. We think when it is shown that Hutson was in possession of the land, placed valuable improvements thereon, under a claim of ownership which was recognized by Lester, and then entered into an arrangement with Lester to pay the obligation named in the contract, and Lester in pursuance thereto sold part of the land to pay his obligation due his vendor, and to reimburse him, acceptance is alleged, with the assent of Lester and the allegation that Lester's obligation was satisfied under the terms of the agreement, shows an executed contract—at least in part and so far as Hutson could perform. Lester got all he demanded under the contract for the land and could not have maintained an action, either for the money or for the recovery of the land. Patrick v. Smith, 90 Tex. 267, 38 S. W. 17; Heisch v. Adams, 81 Tex. 94, 16 S. W. 790.

[7] Conceding that by the terms of the agreement originally made Hutson was to pay off the indebtedness by September 12, 1907, or that the agreement should hold good only up to that date, and after that time Lester was under no obligation to sell or convey the land, nevertheless we think a waiver could be alleged and shown. If Lester thereafter recognized the contract as still valid and subsisting, permitting Hutson to improve and remain in possession of the land under a claim of title and right, and by an agreement deeded land to pay off the obligation mentioned in the contract, and under such agreement appropriated the proceeds therefrom, he should, we think, be held to have waived the time limit.

"While neither party by his separate action or nonaction could impair the rights of the other, each could waive his own rights as they accrued from the default of payment of an installment so as to estop him from relying upon such default. To accomplish this it would only be necessary that each should so act as to justify the other in believing and acting upon the belief that the effect of the failure to pay an installment was to be disregarded and that the contract should stand as if there had been no default. The principle of estoppel by waiver would, we think, have proper application in such a case." Bldg. Ass'n v. Steward, 94 Tex. 441, 61 S. W. 386, 86 Am. St. Rep. 864; Mound Mines v. Hawthorne, 173 Fed. 883, 97 C. C. A. 394; Cheney v. Libby, 134 U. S. 68, 10 Sup. Ct. 498, 33 L. Ed. 818; Raymond v. San Gabriel Land Co., 53 Fed. 883, 4 C. C. A. 89.

[8] From whatever angle this contract may be viewed, whether as an agreement to sell and convey or whether as an option given by Lester to Hutson until September 12, 1907, in which to accept, it occurs to us the pleadings show that Hutson's equity attached by acceptance and by agreement. If it was understood that Hutson had until September 12, 1907, in which to accept, it occurs to us the pleadings show that Hutson's equity attached by acceptance and by agreement. If it was understood that Hutson had until that date to pay the consideration, the time was extended and another arrangement was made for payment. If it was a conditional contract upon which sale was not to be made until the conditions were complied with before that date, the allegations show that Lester permitted Hutson to remain in possession and to improve the land, claiming to own it under the contract which Lester recognized, and that he assisted Hutson to pay it out by executing deeds to various purchasers to different tracts, applying the proceeds upon the obligation to pay provided for in the contract. If it was an option, then Lester offered the land to Hutson at a stipulated price, if on or before that date Hutson accepted. It is alleged Hutson went on the land, claimed under the contract, and improved it as his, and Lester recognized such claim. What stronger evidence could there be of acceptance? If Hutson had not gone on or accepted the land before the time limit, but afterwards did so, and under the contract claimed the land which Lester consented to and permitted Hutson to improve it, and assisted him to sell part of the land in order to collect the money due him, we cannot see why a court of equity should not hold Lester to have waived the time for acceptance, and that by his acts he is estopped from now saying he did not accept before that date. According to the allegations, Lester received all he asked for the land and now claims the remaining portion of the land after being paid for.

[9, 10] It is insisted that the allegations

affirmatively show that there was no acceptance until after the 12th of September, 1907, and that such was on a new agreement which is without consideration. The effect of the allegation is that after that date the proposition was open at the price named, and when Lester so left it open and Hutson, by doing the acts he did, signified acceptance, Lester recognized him as a purchaser under the old contract which was in writing. When this was done, the minds of the parties met on the terms of the written contract. There was a mutual promise—one to pay, and the other to convey, the land. Ide v. Leiser, 10 Mont. 5, 24 Pac. 695, 24 Am. St. Rep. 17; Rose v. Ry. Co., 31 Tex. 49. The new agreement was that Lester should execute deeds to such land as was sold and he should have the proceeds until the obligation mentioned in the contract was satisfied. That agreement was not to convey land to Hutson; the written contract did that. It was an agreement to pay for the land. Lester thereby was a trustee for a certain specific purpose, and in making the sale and applying the proceeds he was following out the terms of the trust. Such agreement or arrangement did not violate the statute of frauds. It has long been held in this state that an express trust may be established by parol and that such agreements are not within the statute of frauds. James v. Fulcord, 5 Tex. 512, 55 Am. Dec. 743; Sullivan v. Fant, 51 Tex. Civ. App. 6, 110 S. W. 507; Diffie v. Thompson, 90 S. W. 193; Salter v. Gentry, 130 S. W. 672; Sachs v. Goldberg, 159 S. W. 92.

[11] We recognize the rule that, when the owner of land agrees to convey it to another upon the doing of a particular thing, the relation of vendor does not exist until the thing is done as specified, and that an acceptance of an option after the time limit will not make a binding contract; but if the owner does not withdraw his offer, and the proposed purchaser accepts, and the owner then acts upon such acceptance and thereafter deals with the purchaser under the terms of the proposal, we think in such case a contract should be held to have been made, even though the acceptance was made after the time limit. The case of Johnson v. Portwood, 89 Tex. 235, 34 S. W. 596, 787, cited by appellant, is clearly an option contract, in which it appears the money was not tendered within the time stipulated and was not thereafter accepted; but, if the party had accepted the money after the time without objections, we doubt not he would have been held to have waived the time and thereby have obligated himself to convey according to agreement. We believe the petition is not subject to a general exception, and we therefore overrule the second assignment, and, for the reasons heretofore expressed, we overrule the third, fourth, and fifth assignments.

Assignments 6 to 10, inclusive, are based on bills of exception taken to the action of the court in overruling appellant's objection to the introduction of certain deeds made by Lester to various individuals to portions of the land out of the five sections mentioned in the contract in suit. Without discussing these exceptions, we have concluded under the issues in the case that the deeds were properly admitted in evidence, and assignments 11 and 12, to the introduction of certain deeds of trust executed by Lester, given on the land in question, will also be overruled on the ground last above stated.

[12, 13] Assignments from 13 to 22, inclusive, and assignments 25 to 29, inclusive, will be overruled. These assignments are to certain declarations made by Hutson, testified to by Edelen, Hamlen, Myers, Dowlen, and certain acts by Hutson with reference to the possession of the land in question; the principal objection being that the testimony was inadmissible to prove title because the same was hearsay and self-serving declarations. The issues presented by the pleadings were whether Hutson held possession of the land as Lester's tenant or as the owner. The facts of his possession could be shown, the nature of the possession, and his acts with reference to the possession, such as improvements, cultivation of the land, or use otherwise, and the like. His effort to borrow money with the land as security while he was in possession thereof, we think, is competent testimony on that issue, and, while in possession, Hutson's declarations with reference thereto are admissible, though in their nature self-serving and hearsay. The exception to the rule of hearsay and self-serving in regard to declarations made while in possession of the land are admissible as explanatory of the possession and appear to be well established by the courts of this state. Whittaker v. Thayer, 48 Tex. Civ. App. 508, 110 S. W. 787; Lochridge v. Corbett, 31 Tex. Civ. App. 676, 73 S. W. 96; Hickman v. Gillum, 66 Tex. 314, 1 S. W. 339. We do not think Hutson's declarations that he purchased from Lester and that the money was due under that contract are properly admissible, but as these declarations are excepted to, together with other matters which are admissible, under the rule with reference to bills of exception, pointing out the particular testimony inadmissible from that admissible, we must overrule the exceptions, including those statements. Jamison v. Dooley, 98 Tex. 206, 82 S. W. 780; Ry. Co. v. Gormley, 91 Tex. 401, 43 S. W. 877, 66 Am. St. Rep. 894.

The appellee in this case frequently refers us by their brief to the charge of the court in which the testimony of Hamlen, Myers, and Dowlen as to the statements and declarations made by Hutson with reference to ownership of section 11, north half of section 12 (Edelen's testimony is not referred to in the charge), as to the witnesses named, the court told the jury the declarations were "admitted upon the issue of his claim of ownership," and not to be considered upon

any other issue, and the jury's consideration of them must be "limited to said issue." As we understand the law, declarations are not admitted on the question of ownership but on the character of possession. The issue is: How did Hutson hold possession? As tenant or under a claim of ownership? The fact that he made a claim of ownership is admissible, not to prove the claim, but to show the fact that the claim was made. This is admitted to prove the character of the possession held at the time of making the declaration. We therefore think, if the court admitted the testimony on "his claim of ownership," that the court was in error in so doing. The jury must have inferred that the declaration could be looked to as proof of his claim of ownership—the thing such testimony is not admissible for, as we understand from the authorities. So, in holding the testimony admissible set out in the assignments above overruled, we do not wish to be understood as holding that it is admissible upon the issue of his claim of ownership. We simply hold it admissible to show that he made such claim and that such can be considered only on the issue or character of Hutson's possession at the time of making the claim.

Under the twenty-third assignment, complaint is made at the action of the court in permitting the witness Edelen's answers to cross-interrogatories, and introduced by appellee, to be read in evidence. The testimony objected to is as follows:

"I have no reason, and know of no reason, for wishing to do Mr. Hutson's widow any injustice, or to aid Mr. Lester to do her an injustice; nor have I any reason or desire to do Mr. Lester any injustice, or aid Mr. Hutson's widow to do him an injustice. When Mr. Hutson first applied to me for a loan, he stated that he wanted to borrow $9,500, of which amount it (he) stated he needed $8,500 to pay Mr. Lester the balance of the purchase price of the lands, a part of which he offered as security for the loan; the balance of the money, $1,000, wanted, he did not state to me the purpose for which he intended to use it. He stated to me that he had purchased the lands from Mr. Lester under a contract of purchase, and that he owed a balance of the purchase price; that the time for him to make payment had expired under the terms of the contract; but that Mr. Lester had agreed to allow him to keep the land and pay the balance of the purchase price as provided for in the contract. He stated that Mr. Lester was urging him to make payment of this balance, and that for that reason he was anxious to secure the money and make the payment and to get rid of Mr. Lester. I was in Canyon City on other business on both occasions when he applied for the money, and, when I was taken by him to see the property, I fully expected to make the loan, and made a careful inspection of the tract offered as security for the money. He offered on both occasions to give a security for a loan a section and one-half section of the lands known as the Palo Duro ranch."

[14] The appellant objected to the admission of this testimony on the ground that it was irrelevant and immaterial and highly prejudicial to the rights of appellant; that the testimony purports to give acts and declarations of Mr. Hutson out of the presence of appellant, and are therefore hearsay and self-serving and cannot bind defendant, because the acts and declarations of one in possession of real estate are not admissible to prove title; and that it was not shown that Hutson accepted the offer to comply with the contract of 1907. Clearly, this testimony, or most of it, is hearsay and self-serving—all the statements of Hutson to the witness as to his purchase of the land from Lester, the amount due, the agreement by which Lester allowed Hutson to keep the land and pay for the balance provided for in the contract, etc. These were the facts, or part of the facts, upon which the appellee relied to show an equitable title to the land in Hutson. This testimony was not admissible for the purpose of showing title; on that point all authorities agree. Mooring v. McBride, 62 Tex. 309; Gilbert v. Odum, 69 Tex. 670, 7 S. W. 510; Dodge v. Trust Co., 93 U. S. 379, 23 L. Ed. 920; Elliott on Evidence, §§ 553, 555, and 1621; Chamberlayne, Modern Law of Evidence, §§ 2600 and 2601.

It will be noted that the witness not only testifies to the balance then due on the contract with Lester for the purchase of the land, but he stated the time had passed for payment under the terms of the contract, "but Mr. Lester had agreed to allow him to keep the lands and pay the balance of the purchase price as provided in the contract," and that Lester was urging him to pay, and that Hutson therefore was desirous of getting rid of Lester. The original contract of sale by its terms stipulated that the agreement held good until September 12, 1907. These declarations of Hutson which are testified about were made in May, and July, 1910, over two years after the time limit prescribed by the contract. The appellee relies on the agreement of Lester to extend the time and upon waiver by him of the time by recognizing Hutson's right to complete the purchase, and hence that he was estopped from insisting upon the time limit. These declarations testified to by the witness made by the deceased Hutson are a recital of facts which show an agreement to extend the time, and a waiver of time by Lester, establishing thereby Hutson's equitable title to the land, and are facts relied on by appellee as the source of her claim of title. In admitting this testimony the mouth of the deceased man was opened, and his unsworn testimony on the very points at issue as to his rights under the contract to the land are given in evidence. We do not believe it was ever the purpose, in establishing the exception to the rule, that hearsay and self-serving declarations are inadmissible, to permit a party in possession to give a recitation of his title or facts establishing title and get such recitation in the interest of such title before a court or jury. In practical application it is difficult enough to limit the purpose of a claim of ownership without also trying to limit the effect of facts upon which such

claim is made. We believe that Chamberlayne, Modern Law of Evidence, § 2601, gives the correct rule:

"In and of itself a detail of past transactions does not assist to constitute a right or liability. Verbal acts contained in it cannot therefore be part of the res gestæ properly so called. In the present connection, what the tenant or holder of property says by way of narrative as to the history of his possession or the nature of his title is not a relevant fact, though made while he is still in possession. The same rule applies to declarations regarding the details of the speaker's title to his claim that it is 'good' and to like assertions made by him as that the declarant actually owns a given quantity of land. Such declarations not being received in favor of the person who makes them, a fortiori they will not be admissible in favor of those standing in privity with him."

In Baker v. Drake, 148 Ala. 513, 41 South. 845, it is said:

"Declarations made by a party while in the actual possession of property, asserting title in himself, are admissible in evidence as a part of the res gestæ, explanatory of the possession; but this declaration cannot be extended to include declarations as to the history and source of such title."

Such we understand to be the rule in this state. Campbell v. San Antonio, etc., 133 S. W. 750; McDow v. Rabb, 56 Tex. 159; Hays v. Hays, 66 Tex. 606, 1 S. W. 895. The fact that Hutson was trying to secure a loan was then a verbal act while in possession of the land which was admissible to show claim of title; but, as above stated, we do not think the declaration showing the source of the title—that is, that he had purchased under a contract from Lester, and the like—admissible, if properly segregated from facts which were admissible, and such facts should have been excluded.

We have been in some doubt as to whether we can properly consider the twenty-third assignment, and whether or not there is sufficient legal testimony objected to as shown by the bill, such as would have warranted the trial court in overruling the objection. We believe, however, as nearly all the facts objected to are not admissible, and only some immaterial statements, such as to why the witness expected to make the loan, and other facts, as to the description of the land and quantity of the land, etc., which had been theretofore fully testified to, that we should not disregard the bill. The admission of these various facts and others enable appellee to prove by the declaration of Hutson that he had bought the land from Lester; that Lester had extended the time for compliance under the terms of the contract; that there was then due $8,500 clearly inferring that payment of the other sums which were due under the contract had been made. In fact, by these declarations, appellee established her theory of the case. We do not feel that we would be justified in refusing to consider this bill simply because there are some immaterial statements not falling under the objections made. We therefore sustain the twenty-third assignment of error.

The thirtieth assignment complains of the action of the court in refusing to permit appellant to testify that "not one cent had been paid me" for section 11 and the north half of section 12, Randall county, and section 11 in Deaf Smith county. The appellee objected to this testimony that it called for a conclusion of the witness, and that he was called to testify to a transaction between himself and a deceased person. The court sustained the objection.

The thirty-first assignment complains of the action of the court in refusing to permit appellant to testify "there was no other contract" made between Hutson and Lester on or subsequent to September 12, 1907.

The thirty-second assignment: Appellant was not permitted to answer, "there was no one interested in the loan with me," obtained from Post with Herd and Ross named as trustees in the deeds of trust. This loan appears from the record to have been secured November 9, 1910, in order to obtain money to pay off the balance of the purchase money due on the five sections of land by Lester to his vendor the Cedar Valley Land & Cattle Company.

The thirty-third assignment: Appellant was not permitted to answer that "no one had paid me anything for that" consideration for the contract of January 8, 1907, pleaded by plaintiff, appellee herein.

The thirty-fourth assignment: Appellant was not permitted to testify that a check for $21,333.33, paid January 8, 1907, that "it was the cash payment" and for the purpose of paying the cash payment due the Cedar Valley Land & Cattle Company for the land deeded September 12, 1906.

The thirty-fifth assignment: Appellant was refused permission to testify "it was my money paid for it" (the five sections of land). Substantially the same objections were made to all of the testimony so offered as set out in assignment No. 30.

The record shows in this case that the deposition of Lester was taken by the appellee under the statute upon oral examination, and that most of his deposition was introduced by appellee, the administratrix herein. The testimony of Lester so introduced shows that he had been acquainted with Hutson since 1900. When he first moved to Canyon City, Hutson was living on the T. Anchor ranch. About that time a bank was organized in Canyon City, with Lester as its president and Hutson as its vice president. Hutson was a stockholder in the bank until his death, and some years earlier he had ceased to be an officer of the bank. Some time in 1910 the friendly relations between the parties were broken off, owing to some suits instituted by the bank against Hutson, for the State Normal School subscription by Hutson. Lester testified to the purchase of the five sections of land in question from the Cedar Land & Cattle Company September 12, 1906. He testified to the con-

veyance and sale of 2½ sections of land so purchased to Beach and others in 1908 and 1909, and to the consideration received in money and notes. He identified certain sheets of paper with memoranda thereon (the sheets of paper were found pinned to the contract between Lester and Hutson after Hutson's death, with some other valuable papers belonging to Hutson). He testified that his recollection was that the memoranda was made to ascertain the profits on the land. Aside from Lester's testimony, the testimony tends to show by the memoranda that the original cost was figured upon each section of land, the amount of the interest payments, the price at which it had been sold by Lester, and what it had brought. This memoranda appears to have been prepared in October, 1909. Lester's testimony, introduced by appellee, further shows that in November, 1910, he gave deeds of trust to Herd to secure Post, in the sum of $8,000 principal, together with interest notes on section 11, block K–14, and also executed another deed of trust to and for the same parties on section 11, and the north half of section 12, block 1, T. T. R. R. Co., Randall county, to secure $8,000 principal, together with interest notes. He says he got this loan to take up the Cedar Valley notes on the five sections; that the land company, Lester, and Hutson each had an account with the bank of which Lester was president; that Hutson had control of the Cedar Valley Land & Cattle Company's account; and that the transactions above named were carried through the books of the bank. Hutson died January 14, 1911. Two certain payments to the land company were made November 10 and 11, 1910, with the money borrowed on the deeds of trust above mentioned, which was all that was then due by Lester on the land. It appears from Lester's testimony that, when he sold off a tract of land out of one of the sections, Hutson and one Peacock, acting for the land company, would execute a release on the sections sold, and this was done whether the notes thereon had been fully paid or not. The notes being unpaid, the land company demanded their payment, and Lester borrowed the money on the deeds of trust to pay off the notes. It is almost impossible to write this opinion so as to reflect the record without going into greater detail; but we believe this will be sufficient to understand the assignments. We should state at this place that, before Herd would accept the deeds of trust or make the loan on the land for Lester, he required a statement from Hutson that he (Hutson) was in possession of the land as tenant of Lester and that he had no interest therein except as such tenant. This statement Hutson made, signed, and acknowledged.

[15] The propositions presented by appellant under the above assignments are that appellee called the appellant to testify and removed his incompetency as a witness under article 3690, R. S., thereby rendering him competent to testify in all matters relating to the subject of plaintiff's examination; and, further, he was not disqualified because the appellee sued as sole legatee; also, that the testimony did not relate to a "transaction" between Hutson, the deceased, and Lester, the interested witness. All these propositions are not made under each of the assignments, but we will treat them together. We think the authorities in this state and in other jurisdictions hold that, when the deposition of the opposite party is taken by the representative of the deceased person, the other party may cross-examine the witness and bring out matters favorable to his interest, and that such testimony will not be excluded on account of incompetency if offered by him. Jackson v. Jones, 74 Tex. 104, 11 S. W. 1061; Grieb v. Stahl, 101 Tex. 306, 107 S. W. 41.

[16] The question here presented is whether the party so called can, after his deposition has been taken, testify to other matters not testified to or asked about in the deposition. We are of the opinion that, in any event, if he had been called, the examination should be confined to the matters originally inquired about. Such we understand to be the holding of the Missouri Supreme Court in the case of Ess v. Griffith, 139 Mo. 322, 40 S. W. 930, and other cases decided by that court. Jones on Evidence, § 781. But that court holds further, as we understand it, that, when the party is called to testify by deposition, he will he permitted to testify at the trial on the matters inquired about in the deposition. However, in that case the deposition was then on file, which the plaintiff had theretofore taken. In Jackson v. Jones, supra, our Supreme Court permitted the witness to testify at the trial on the matters that had been inquired about in the depositions, because, the court said, when his ex parte depositions were taken he could not fully explain the matter inquired about without his books. In this case there was no excuse for not fully explaining the matter inquired about. The appellant was then represented by an attorney, who was present and asked six questions only of appellant, which he answered. We doubt the wisdom of permitting the witness, after he had had time for reflection, at some future time, to take the stand and enter into full explanation of the transaction, when in the first instance he had failed or declined to do so, without a sufficient excuse therefor. We are inclined to think the spirit of the statute would be violated under such circumstances and that it would be carrying too far the doctrine of waiver. However, in this case, all of the above assignments, except one perhaps, can be disposed of, we believe, upon the objection that the question called for and the answers were conclusions of the witness, or were immaterial.

[17] As will be noted, the testimony rejected was that Lester was paid nothing for the land; that there was no one interested with him in the loan on the land; that the check represented the cash consideration; and that it was his money that paid for the land. The fact that Lester paid the cash payment for the five sections does not appear to have been a controverted issue; hence the refusal of the check and the testimony that Lester paid the cash was immaterial and no injury resulted. The other matters as to whether he paid anything for the land, and that there was no one interested with him in the loan, must be determined from the facts of the case. The appellee, as we understand the record, does not contend that any cash was paid for the land, but that Hutson paid for the same by a sale of part thereof under the agreement and arrangements that the proceeds belonged to Hutson and were to be applied by Lester to Hutson's obligation under the contract.

[18] The other testimony excluded; that is, that there was no other contract made on and subsequent to September 12, 1907. Appellant insists this was not testimony relating to a transaction with the deceased, but that it was simply a denial of any such transaction. The courts have interpreted the term "transaction" as the justice of each case seems to demand, rather than by abstract definition. Jones on Evidence, 785. In this case the question, whether there was an agreement or understanding that Lester should sell the land and apply the proceeds upon Hutson's obligation, depended for its establishment upon the circumstances in evidence. The agreement to sell was in writing. Appellee contends under that contract Hutson improved the land and also offered testimony of Lester's admission made to witnesses, his conduct, and other circumstances, to show the agreement. To permit Lester now to say that his and Hutson's contract did not amount to an agreement appears to us would be permitting him to testify to the transactions between himself and Hutson. Appellee contends that such conduct evidences an agreement. If Lester should say there was no agreement, then he will be testifying to the transactions relied upon by appellee; further, we think this calls for his conclusion, which must necessarily have been based upon the transaction between Hutson and himself. Whatever may be the correct rule as to admitting testimony denying that there was any such transaction, we think in this particular case the testimony offered was properly excluded. The above assignments are therefore overruled.

[19, 20] The thirty-sixth assignment of error should be sustained. The effect of the evidence offered and rejected by the court is that, before Lester purchased the land in question, Hutson was in possession at that time; that is, his company was. Witness did not know whether he or his company, the Cedar Valley Land & Cattle Company, were in possession. As appellee relied upon Hutson's possession of the land as a fact showing his right to the land, and the facts in this case indicate Hutson had acted for the land company and had continued in possession, it was a circumstance which should have gone to the jury. This testimony was not subject to the objection that this was a transaction between appellant and a deceased person. Moores v. Wills, 69 Tex. 109, 5 S. W. 675; Huff v. Powell, 48 Tex. Civ. App. 582, 107 S. W. 364; Walker v. Pittman, 18 Tex. Civ. App. 519, 46 S. W. 117; Killfoil v. Moore, 45 S. W. 1024; Choate v. Huff, 4 Willson, Civ. Cas. Ct. App. § 281, 18 S. W. 87.

[21] The thirty-seventh assignment should be sustained. The testimony offered and rejected upon objection by appellee is substantially that he (Lester) had been in possession of section 11, in block K–14, Deaf Smith county, since his purchase, and was then in possession of the same, and that since the date of that purchase he had leased it to Edgar Mooney. This section was part of the land sued for and which appellee alleged Hutson was in possession of and improved. The question of possession of the land was relied on by appellee as a circumstance showing her right. We do not think the statutory objection was sufficient to exclude this testimony. A party may testify to what he himself has done under a contract with the deceased. Potter v. Wheat, 53 Tex. 401, and authorities under the thirty-sixth assignment.

[22, 23] We think the thirty-eighth assignment should be sustained. This testimony was to the effect that Lester's purpose in borrowing the money from Post to pay off the notes due on the land was to prevent suit by Hutson, who was then threatening to bring suit against him on the notes due by Lester, to the land company, because the bank had theretofore sued Hutson on some obligation due it by him. The objection is that the testimony was immaterial and irrelevant; that it showed that the intention of borrowing was a private intention of Lester, was a conclusion and transaction between appellant and Hutson, the deceased. The evidence in the case shows that at the time of borrowing the money Hutson had declared he was Lester's tenant, he was the agent of the land company—or the evidence tends to show that he was. Lester is charged with unnecessarily incumbering the land. It also shows that Hutson had signed a release of the notes for his company, without the payment of the notes having first been made. The act of Hutson on that date in threatening Lester evidences that he recognized Lester's title to the land; at least, it is a circumstance of which the jury should have been in possession. There are several circumstances which we think render the testimony material and pertinent to the issues raised by the pleadings and evidence. Appellee had

taken the deposition of Lester, and this particular testimony excluded was not offered by her with the rest of the deposition, and when appellant offered it the court excluded it. All the authorities hold that when the witness is called by the administrator, who elicited testimony, either by deposition or otherwise, the testimony so given is admissible and the disqualification of the witness is thereby waived.

[24-26] The twenty-fourth and thirty-ninth assignments relate to the admission of a purported copy of letter, dated August 16, 1910, from Hutson to D. A. Parks, and the testimony of Parks with reference thereto. In this copy of the letter Hutson asked Parks to send deed and abstract to section 11, block 1, and the north one-half of section 12, stating therein he had made arrangements for money to close up the deal for the five sections, and requested Parks also to send notes signed by Lester and Parks to Hutson on section 11, K–14, Deaf Smith county. Parks' deposition, by oral examination, was read in part, wherein part of the letter was read to him and he asked if he recognized it as a copy of the original, and he replied he thought it was a substantial copy; that he thought he had the original and would look for it, and if found attach it to the deposition. This appears not to have been done. The copy of the letter was introduced, together with Parks' testimony on the letter, over the objection of the appellant, to the effect that a proper predicate had not been laid for its introduction; that the letter shows to have relation to a transaction between Parks and Hutson; and that appellant is not shown to have had anything to do with it or that he ever saw the letter, and because the statements contained in the letter were hearsay and self-serving. Parks was the cashier of the bank of which appellant was president. Parks testified he had agreed to purchase section 11, K–14, from Lester at $25 per acre, but that this trade fell through. We find nothing in the record showing that Lester knew anything of the correspondence between Parks and Hutson, unless the fact that Parks was cashier of the bank. The testimony shows that Lester was away from home at the time of this correspondence. We do not think there was any such predicate laid as would authorize the introduction of the testimony. If the original was in Parks' hands, it could have been obtained for use in the trial by proper process of the court. Notice to appellant was not sufficient; the letter was not his. The testimony and letter thereunder evidence that it related to an entirely different transaction to the one pleaded by appellee. Further, these are declarations made to Parks by Hutson and were self-serving and hearsay. If Lester knew they were made, we do not think that they could bind him. He had no way of preventing Hutson from making the claim he did in the letter. If Hutson had written Parks that the bank belonged to him, we cannot see how his representatives could use the declaration as proof of that fact. The fact that Parks was cashier of the bank did not constitute him Lester's agent in the land transaction. If Lester knew of the letter, we know of no rule that would require him to answer Hutson's letter to Parks and deny that the implications in Hutson's letter were true. He in this matter was not called upon to deny the statements in the letter whether he knew or did not know of it. We think the assignments should be sustained.

[27] Assignments 41 to 60, inclusive, are overruled. These assignments relate to the charge of the court as given and certain special requested instructions refused by the court. We find no exception in the record taken to the charge of the court before it was read to the jury or exceptions taken to the refusal of the special requested charges by the court. This court has recently held, in the cases of Railway Co. v. Galloway, 165 S. W. 546, Mutual Life Insurance Co. v. Rhoderick, 164 S. W. 1067, Johnson v. Hoover, 165 S. W. 900, McSpadden v. Vannerson, 169 S. W. ——, and Railway Co. v. Crutchfield, 165 S. W. 551 (not yet officially reported), that such exceptions are required under Acts of the 33d Legislature, General Laws, p. 113. We will not therefore discuss the charges given or refused.

[28] The sixty-first and other assignments are with reference to the verdict of the jury and the decree rendered thereon. We will only state our general views with reference thereto. The verdict is as follows:

"We, the jury, find for plaintiff for the quieting of her title and for the sum of nineteen thousand, nine hundred fifty-six and ninety-one hundredths ($19,956.91)."

The judgment decrees the title to the 2½ sections of land in appellee and removing cloud, and that appellee have judgment for the sum found by the jury, with 6 per cent. interest from the date of the judgment; and, further, that it appeared to the court that $18,368.67 is the amount of the note secured by the deeds of trust, which are described in the petition heretofore set out, and that the balance thereof, $1,588.24, is the balance due plaintiff on account of the proceeds received by Lester in favor of Hutson on sale of the land included in the contract, and that no execution shall issue to collect the $18,368.-67, unless Lester fails to pay off the deeds of trust, and should he pay the same off the same shall be satisfied upon discharge of the deeds of trust, etc. Execution was ordered issued forthwith for $1,588.24. The charge of the court substantially instructed the jury to charge the plaintiff with the purchase price paid by Lester to his vendor for the five sections of land, with the interest, costs, and other expenses. Then to credit her with the proceeds received by Lester from the sale of the lands out of the five sections. Ap-

pellee suggests that this is an equity proceeding, and the decree therefore a proper one. The fact that it is such will not change the rule of law, where the questions of fact are submitted to the jury for their finding. The judgment assumed that the jury found that Lester had of the proceeds from the sales of land belonging to Hutson $1,588.24, and that they found $18,368.67 as an incumbrance by virtue of the deeds of trust. The verdict of the jury does not so state. The decree in this particular is based upon the judge's findings, and not on the findings by the jury. We think if a jury should find the balance due on an accounting between Lester and Hutson and so state, and should find the amount of the incumbrance and so state, upon such findings the judge as a chancellor could render the proper decree. The court, by the judgment, it occurs to us, attempted to correct and explain the findings of the jury in the judgment, which we believe, under the rules of law in this state, he was not authorized to do. We therefore sustain the assignments to the effect stated by us.

The judgment of the lower court will be reversed, and the cause remanded.