SCOTT v. SCOTT. (No. 8000.)

(Court of Civil Appeals of Texas. Ft. Worth. June 20, 1914. Rehearing Denied Oct. 17, 1914.)

1. HUSBAND AND WIFE (§ 259*)—CONTROL OF COMMUNITY PROPERTY—ORDER OF PROBATE.

Any right of a husband to control, management, and disposition of community property, consisting of commissions earned by his wife as guardian, is not divested or impaired, though its enforcement may be made more difficult, by an order of the probate court directing payment thereof to her by her successor as guardian.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 911; Dec. Dig. § 259.*]

2. JUDGMENT (§ 812*)—COLLATERAL ATTACK—PROCEEDING IN REM.

An order of the probate court directing payment by a guardian from funds in his hands to his predecessor as guardian of commissions earned by her is in the nature of a proceeding in rem, binding on all persons till reversed or set aside, notwithstanding a failure to specially serve, or a failure of appearance by one who might have contested it; so that it cannot be collaterally attacked.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1435–1442; Dec. Dig. § 812.*]

3. HUSBAND AND WIFE (§ 247*)—COMMUNITY PROPERTY—CONTROL—STATUTES—REPEAL.

The right given the husband by Rev. St. 1911, art. 4622, to control, management, and disposition of the community property, being a simple power or agency to be exercised by him, not alone in his own interest, but also as a trust for the interest of his wife, is extinguished as to prior as well as subsequent personal earnings of his wife, by Acts 33d Leg. c. 32 (Vernon's Sayles' Ann. Civ. St. 1914, art. 4622) declaring her personal earning shall be under the control, management, and disposition of her alone.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 879, 886; Dec. Dig. § 247.*]

4. CONSTITUTIONAL LAW (§ 93*)—HUSBAND AND WIFE (§ 247*)—VESTED RIGHTS—CONTROL OF COMMUNITY PROPERTY.

Acts 33d Leg. c. 32 (Vernon's Sayles' Ann. Civ. St. 1914, art. 4622), amending Rev. St. 1911, art. 4622, by merely taking from the husband and giving to the wife the right of control, management, and disposition of that part of the community property which consists of personal earning of the wife, but still leaving it community property, impairs no vested right.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 176, 177, 181–185, 190–192, 194–200, 208, 213–224, 236; Dec. Dig. § 93;* Husband and Wife, Cent. Dig. §§ 879, 886; Dec. Dig. § 247.*]

Appeal from District Court, Johnson County; O. L. Lockett, Judge.

Proceeding between Mrs. Lelia Scott and George A. Scott. From a judgment of district court, on appeal from the county court, for said Lelia, said George appeals. Affirmed.

W. H. Spinks, of Alvarado, for appellant. Walker & Baker, of Cleburne, for appellee.

CONNER, C. J. This action was instituted in the county court on the 5th day of June, 1913, in the form of a motion by Mrs. Lelia Scott, wife of George A. Scott, to require E. L. Shelton, guardian of the estate of a minor son of the said Lelia and George A. Scott, to pay to her the sum of $158.35 which said guardian had theretofore been ordered to pay her as commissions earned by her during a previous guardianship of the same minor, such order to Shelton having been duly made by the county court upon final approval and discharge of Mrs. Lelia Scott as such guardian. Shelton answered the motion to the effect that he had been garnished at the instance of S. E. Duncan and J. Tobolowsky, who had instituted suits against Geo. A. Scott and Lelia Scott upon open accounts for merchandise purchased by them, and, further, that Lelia Scott was the wife of George A. Scott, the latter of whom it was asserted was entitled to the fund in question. The guardian, therefore, prayed that Duncan, Tobolowsky, and George A. Scott be cited to appear and assert their claims, which they did. Upon a hearing of the motion on the 5th day of June, 1913, the county court entered its order directing E. L. Shelton, the guardian, to forthwith pay to Mrs. Lelia Scott the sum of $141.17 as the balance due her as commission as the former guardian in the cause. It was further adjudged that the claims of George A. Scott, J. Tobolowsky, and S. E. Duncan were without force. The last-named parties excepted and gave notice of appeal to the district court. The matter again came on for hearing in the district court, on the 14th day of November, 1913, where the same judgment, in substance, was

entered in favor of Mrs. Lelia Scott. From the judgment of the district court so entered George A. Scott alone has appealed to this court.

The trial court filed his conclusions of fact and law, which, omitting formal parts, are as follows:

"First. That at the time Mrs. Lelia Scott was acting as guardian of Edwin Scott, their son, that Geo. A. Scott and Mrs. Lelia Scott were husband and wife.

"Second. That said Geo. A. Scott and Mrs. Lelia Scott permanently separated about April 1, 1912, and that Mrs. Scott has since been living in Kansas City, Mo., and Geo. A. Scott in Texas.

"Third. That the commissions allowed Mrs. Scott were earned by her while she was the wife of Geo. A. Scott.

"Fourth. That on the 4th day of September, 1912, in said estate that the county court of Johnson County, Tex., allowed Mrs. Lelia Scott, as commissions as guardian, the sum of $158.35, accepted her resignation, approved her final account, and appointed E. L. Shelton guardian of Edwin Scott the minor son of Geo. A. Scott and Mrs. Lelia Scott, and ordered said Shelton to forthwith pay said commissions to Mrs. Scott.

"Fifth. That said order aforesaid was duly made by the county court, and was not appealed from or in any manner vacated, and remains in full force and effect.

"Sixth. That the commissions were awarded to Mrs. Scott after the separation between Geo. A. Scott and Mrs. Lelia Scott, and that she is entitled to retain such commissions, less $17.18 due by her to the estate.

#### "Conclusions of Law.

"I find as a conclusion of law that Mrs. Scott is entitled to the commissions awarded to her by the county court, less the amount due the estate by her, leaving a balance of $141.17, and that same are not subject to the control of her husband, and that E. L. Shelton, guardian, be directed to pay the same to her forthwith."

Other than as stated in the above findings, the reasons for the court's judgment do not appear. The judgment against Duncan and Tobolowsky was presumably based on the ground that the fund in controversy was in custodia legis, and hence not subject to garnishment. Kreisle v. Campbell, 89 Tex. 104, 33 S. W. 852; Pace v. Smith, 57 Tex. 555; Curtis v. Ford, 78 Tex. 267, 14 S. W. 614, 10 L. R. A. 529; Loftus v. Williams, 24 Tex. Civ. App. 482, 59 S. W. 292. But whatever the reason, Duncan and Tobolowsky have not appealed, and we need not, therefore, discuss or determine their rights in the fund, if any they ever secured.

[1, 2] The sole question, therefore, left for determination is whether the court properly denied George A. Scott, the husband, the claim set up by him to the fund. The husband's claim is asserted by virtue of the fact alleged and found that Lelia A. Scott was his wife, and that during the existence of their marital relation she earned the commissions in question and to which he was entitled by virtue of article 4622 of the Revised Statutes, which reads:

"All property acquired by either husband or wife during the marriage, except that which is acquired by gift, devise or descent, shall be deemed the common property of the husband and wife, and during the coverture may be disposed of by the husband only."

That the fund in question constitutes the community property of George A. and Lelia Scott is undisputed, but the privilege or right of the husband to the control, management, and disposition of such property as conferred by the article quoted was not necessarily dependent on its delivery to the husband. The right was not necessarily impaired by the possession of the wife. In such case the enforcement of the right might have been more difficult, but the right itself existed as before. It cannot therefore be said that as a matter of law the original order of the probate court directing the guardian to pay to Mrs. Scott the commissions earned by her divested George A. Scott, the husband, of any right in property, or even of a power or privilege given him by law. In that proceeding he made no contest, neither alleged nor made proof of any state of facts that precluded him from later exercising the privileges asserted. The original order directing Shelton to pay to Mrs. Scott funds in his hands as guardian was never in any manner set aside or qualified by an appeal or otherwise, and is in the nature of a proceeding in rem and binding upon all persons, including the husband, until reversed, or set aside notwithstanding a want of special service or a failure to appear on the part of one who might have contested the same. See 23 Cyc. 1406; Lynch v. Baxter, 4 Tex. 431, 51 Am. Dec. 735; Toliver v. Hubbell, 6 Tex. 166; Dancy v. Stricklinge, 15 Tex. 558, 65 Am. Dec. 179; Davis v. Wells, 37 Tex. 606; McCampbell v. Durst, 73 Tex. 410, 11 S. W. 380; Crawford v. McDonald, 88 Tex. 626, 33 S. W. 325. Possibly in that proceeding George A. Scott might have intervened and secured an order for a delivery of the commissions to him by virtue of the then statute giving to the husband the exclusive management and control of community property. But he did not do so, nor does it appear that he at any time made an effort to have the order set aside or qualified. It, therefore, may well be said that he cannot now do so in a subsequent, collateral proceeding such as this. In other words, the original specific order to the guardian to pay to Mrs. Lelia Scott and not to another it would seem must at all events be now followed.

[3, 4] We need not, however, limit our final conclusion to the grounds above suggested. It is undisputed that the fund in question consists of the personal earnings of the wife, to the possession of which the wife is now entitled under the terms of amended article 4622 effective at the time of the judgment in this case. See General Laws, 1913, page 62. The amended article, so far as it need be quoted, reads as follows:

"Article 4622: All property acquired by either the husband or wife during marriage, except that which is the separate property of either one or the other, shall be deemed the common property of the husband and wife, and

during coverture may be disposed of by the husband only, provided, however, the personal earnings of the wife, the rents from the wife's real estate, the interest on bonds and notes belonging to her and dividends on stocks owned by her shall be under the control, management and disposition of the wife alone," etc.

It is to be observed that by the amendment the personal earnings of the wife during the continuance of the marital relation constitute community property as before. The change is merely in the designation of the wife, rather than the husband, as the one who shall have the control, management, and disposition thereof. The husband's right, therefore, to a community interest remains. This has not been divested by either the orders of court under consideration, or by the amending law, and hence we think the amended law, instead of the old law, applied to the facts of this case at the time of the trial, notwithstanding the fact that the fund in question was earned by the wife prior to the amendment quoted. For while George A. Scott under the old law had acquired a property interest in his wife's earnings which could not, under the limitations of constitutional provisions, be divested by any subsequent legislative act, no such vested right to its control and management existed. The rights of the husband and of the wife to community property at all times as yet are equal, and the original designation of the husband instead of the wife as the one to control and manage community property was a mere arbitrary direction, founded upon legislative policy. The husband had no greater abstract right of control than the wife, and it seems to us that the Legislature had the power at will to limit the control of the husband, as was done in the amending act, whenever a change in the legislative mind or policy occurred, without being liable to the objection that thereby a vested right within the meaning of the Constitution would be disturbed.

While we know of no case where the question has been mooted or decided in this state, yet, as indicated, to our minds the right given to the husband under former laws to the control, management, and disposition of community property was in the nature of a simple power or agency to be exercised by the husband, not alone in his own interest, but also as a trust for the interest of his wife. If so, as is very generally recognized, we think the power so derived wholly from a statute was extinguished by its repeal. See section 165, Sutherland on Statutory Constructions, and authorities cited in note. It is said in the section cited in relation to powers conferred by statute that:

"All acts done under a statute whilst it was in force are good; but if a proceeding is in progress in fieri, when the statute is repealed, and the powers it confers cease, it fails, for it cannot be pursued."

As also applicable to the question under consideration we cite the case of Holyoke v. Jackson, by the Supreme Court of Washington, 3 Wash. T. 235, 3 Pac. 841. In that state a system of community property of husband and wife similar to our own was in force prior to 1879, and it was provided that the husband could dispose of the same with "like absolute power of disposition as of his own separate estate." By an act of 1879 (Laws 1879, p. 78), however, it was provided that no disposition of the community property could be made without the joinder of the wife. After the act of 1879 took effect the husband alone conveyed community property that had been acquired under the previous law, and it was insisted, in effect, that the power of absolute control under the previous law was a vested right, and that the law of 1879 was not operative as to such property. In disposing of the question the court said:

"By virtue of the statute this husband and wife creature acquires property. That property must be procurable, manageable, convertible, and transferable in some way. In somebody must be vested a power in behalf of the community to deal with and dispose of it. To somebody it must go in case of death or divorce. Its exemptions and liabilities as to indebtedness must be defined. All this is regulated by statute. Management and disposition may be vested in either one or both of the members. If in one, then that one is not thereby made the holder of larger proprietary rights than the other, but is clothed, in addition to his or her proprietary rights, with a bare power in trust for the community. This power the statute of 1873 chose to lay upon the husband, while the statute of 1879 thought proper to take it from the husband and lay it upon husband and wife together. As the husband's 'like absolute power of disposition as of his own separate estate,' bestowed by the ninth section of the act of 1873 [Laws 1873, p. 452], was a mere power conferred upon him as member and head of the community, in trust for the community, and not a proprietary right, it was perfectly competent for the Legislature of 1879 to take it from him and assign it to himself and his wife conjointly."

Prior to 1901 in New Mexico the law vested in the husband the absolute power of disposition of community property. In that year a law was adopted declaring that:

"Neither the husband nor wife shall convey, mortgage, incumber, or dispose of any real interest, or legal or equitable interest, therein, acquired during coverture by onerous title, unless both join in the execution thereof." Laws N. M. 1901, c. 62, § 6a.

It was contended that the amendment did not apply to community property owned at the time of its enactment, and the courts of New Mexico upheld this contention on the theory that the husband had vested rights that would be taken away if the statute of 1901 was allowed to apply to land previously acquired. On appeal, however, to the Supreme Court of the United States this contention was denied in the case of Arnett v. Reade, 220 U. S. 311, 31 Sup. Ct. 425, 55 L. Ed. 477, 36 L. R. A. (N. S.) 1040. See, also, Warburton v. White, 176 U. S. 484, 20 Sup. Ct. 404, 44 L. Ed. 555.

In California a contrary view seems to be

upheld, but the California decisions are apparently based on the theory that their statutes granting to the husband the right to the disposition of community property with "like force and effect as if it was his own" in effect devolves upon him the absolute estate; the interest of the wife in the community property being a "mere expectancy." See Spreckels v. Spreckels, 116 Cal. 339, 48 Pac. 228, 58 Am. St. Rep. 170, 36 L. R. A. 497, and California cases following it. In this state, however, as already indicated, an altogether different right of the wife in community property has been uniformly maintained. As said in Speer's Law of Married Women, § 171:

"No effort is made to vest a greater portion of these joint acquisitions in one spouse than in the other. The wife's rights, in point of ownership, are in every respect the equal of those of her husband. They are identical; in short, they own the estate in community."

See, also, Cervantes v. Cervantes, 76 S. W. 790; Hurley v. Lockett, 72 Tex. 262, 12 S. W. 212.

We conclude, as before stated, that it was within the power of the Legislature to take from the husband and confer upon the wife, as was done by amended article 4622, the power of control over the wife's personal earnings, and that in so doing the husband was deprived of no right of which he can complain, and that the amended article applies as well to earnings before the amendment as to those afterwards. The trial court's conclusions of fact are accordingly adopted, and the judgment of the district court affirmed.

SPEER, A. J., not sitting.