FIRST NAT. BANK OF PLAINVIEW et al. v. McWHORTER et al. (No. 839.)

(Court of Civil Appeals of Texas. Amarillo. Nov. 6, 1915.)

1. HUSBAND AND WIFE ☞257—WIFE'S SEPARATE ESTATE—COMMUNITY PROPERTY.

Rev. St. 1911, art. 4621, as amended in 1913 (Acts 33d Leg. c. 32, § 1 [Vernon's Sayles' Ann. Civ. St. 1914, art. 4621]), providing that all property of either spouse acquired before marriage and afterwards by gift, devise, or descent, as also the increase of all lands so acquired shall be the separate property of the spouses, although the wife shall have the sole management, control, and disposition of her separate property during marriage, provided the husband joins in the manner prescribed by law in the conveyance of her separate real estate, and Rev. St. 1911, art. 4622 (Vernon's Sayles' Ann. Civ. St. 1914, art. 4622), providing that all property acquired by either the husband or wife during marriage, except that which is the separate property of either one or the other, shall be deemed the common property of both, and during coverture be disposed of by the husband only, do not change the rule that property acquired during coverture from the use of the wife's separate property becomes the property of the community.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 543–552; Dec. Dig. ☞257.]

2. FRAUDULENT CONVEYANCES ☞137—CONVEYANCE BY HUSBAND TO WIFE.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 3968, providing that no gift of any goods or chattels shall be valid unless by deed or will duly acknowledged, or unless actual possession shall have come to and remained with the donee, or some one claiming under him, grass seed raised by a wife upon her separate real estate will not be considered as against the husband's creditors, to have been a gift to her by her husband, where actual possession thereof was not given to the wife.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 432–437; Dec. Dig. ☞137.]

3. TRIAL ☞140—QUESTIONS OF FACT—CREDIBILITY OF WITNESSES.

A case wholly dependent upon uncorroborated testimony of a party interested in the litigation, though unopposed by other witnesses, is for the jury, and they have the right to weigh the credibility of the witness.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 334, 335; Dec. Dig. ☞140.]

4. EVIDENCE ☞317—EVIDENCE BASED ON HEARSAY.

In trover by a wife for grass seed seized for her husband's debts, evidence by plaintiff as to the value of such seed, based upon information received by her through others, was inadmissible as hearsay.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1174–1192; Dec. Dig. ☞317.]

5. EVIDENCE ☞143—ADMISSIBILITY—MARKET VALUES.

In trover, testimony as to market value of certain grass seed was inadmissible as being too weak to be considered, where the witness based his estimate on the value of seed which had passed inspection by a seed association, and the record showed that the seed in question had not gained that standard, and the witness admitted on cross-examination that he was not familiar with the situation at that time, had not known of any sales, and had been too busy to give the matter any thought.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 424, 426–428; Dec. Dig. ☞143.]

Appeal from District Court, Lubbock County; W. R. Spencer, Judge.

Action by Kate H. McWhorter and others against the First National Bank of Plainview, Tex., and others, in trover and conversion for grass seed. Judgment for plaintiffs, and defendants appeal. Reversed and remanded.

Mathes & Williams, of Plainview, and J. E. Vickers and Benson & Spencer, all of Lubbock, for appellants. Bean & Klett and W. H. Bledsoe, all of Lubbock, for appellees.

HENDRICKS, J. In 1913, B. O. McWhorter, the husband of Kate H. McWhorter, was indebted to the appellant the First National Bank of Plainview, as surety upon two promissory notes, in an amount between $9,000 and $10,000. In September, 1914, the bank sued B. O. McWhorter upon the notes and caused the levy of a writ of attachment upon certain Sudan grass seed. This litigation is an independent suit of the husband, with the wife, Kate H. McWhorter, in trover and conversion for the value of the seed, alleging that it was the separate property of Mrs. McWhorter, and that the same was not liable for the debts of B. O. McWhorter. The court peremptorily instructed the jury that the seed constituted the separate property of the wife, leaving the question of value only for the consideration of the jury, which they assessed at $9,380.25, afterwards reduced by remittitur in the sum of $1,810.

Both parties treat the real estate upon which the Sudan seed was raised as the separate property of the wife; and the understanding between the husband and wife, by virtue of which the latter claims she acquired the Sudan seed as her separate property, is testified to as follows, the substance of which we reproduce:

Mr. McWhorter had a little farm up there. I also had one. He said to me one day, "Mattie, I think I shall rent the farm this year." I said, "No, that I did not want mine rented, that I might farm my own," and that I wanted to plant it in Sudan seed. He agreed to finance it for me, and I told him that I would have the boys (meaning their children) properly work

the ground as much as possible, "and agreed to put it in cultivation for my own benefit." He purchased the seed for planting and I had an agreement that later, when the seed were sold, "I would keep a memorandum of what he was out on the seed and the entire crop and when I sold it I would repay him." I had a man to plow the land and get it in shape to plant, and my two sons cultivated it. I agreed to pay the older boy $20 per month and the smaller boy $10, to be paid to them when the seed was sold. Mr. McWhorter showed the boys how to manage the crop, and a few times went to the field for that purpose, but never worked the same. When the seed was thrashed, I had it brought to the house, placed in a small garage upon the place; and, when the crop was growing, I had it looked after with a view of having it entered in the Sudan Seed Association, and also had the same inspected by the inspectors at the Experimental Farm, and instructed my son to join the association so that the seed could be sold by it; and after the seed was thrashed, and before I had put it into the association, it was levied upon before the association building was ready for the reception of the seed.

The husband did not testify in the case.

The appellant bank assigns that the court erred in peremptorily instructing the jury to find that the seed was the separate property of the wife, and under the assignments the following propositions are presented:

"The credibility of the witness is a question for the jury, and it was error for the court to assume the truthfulness of plaintiff Kate H. McWhorter's unsupported testimony. * * *

"The undisputed evidence shows that the said seed were produced by the labors of the husband and wife, and their minor children, and the mere agreement between the husband and wife, before the seed was planted, could not have the effect of changing the law of marital property rights. * * *"

[1] At the threshold of the case appellee presents an exposition of the amended acts of 1913 to article 4621, with reference to the rights of married women, insisting that on account of the change of the law there is a change of the title of this character of property. Under this act, as formerly, all property, real and personal, of either spouse, acquired before marriage, and afterwards, by gift, devise, or descent, "as also the increase of all lands thus acquired," shall be the separate property of the spouses. This amendment does say:

"During marriage * * * the wife shall have the sole management, control and disposition of her separate property, both real and personal," provided the husband joins in the manner prescribed by law for the conveyance or incumbrance of her separate real estate; "and the joint signature of the husband and wife shall be necessary to a transfer of stocks and bonds belonging to her or of which she may be given control by this act."

It further says:

"Neither the separate property of the wife, nor the rents from the wife's separate real estate, nor the interest on bonds and notes belonging to her, nor dividends on stocks owned by her, nor her personal earnings, shall be subject to the payment of debts contracted by the husband."

Article 4622, following 4621, just quoted from, provides, as before, that:

"All property acquired by either the husband or wife during marriage, except that which is the separate property of either one or the other, shall be deemed the common property of the husband and wife, and during coverture may be disposed of by the husband only," with the addition, "provided, however, the personal earnings of the wife, and rents from the wife's real estate, the interest on bonds and notes belonging to her and dividends on stocks owned by her shall be under the control, management and disposition of the wife alone, subject to the provisions of article 4621, as hereinabove written."

Of course, if you start with the assumption that this statute makes the products raised upon the wife's real estate the separate property of the wife, instead of community property, this case is ended in favor of the wife; but we are unable to give the statute the interpetation suggested. If it were not for the settled channels of the law, dug deep by successive interpretations heretofore made, the question might at least become debatable. The statute does give the wife the management, control, and disposition of her real property, provided that the husband, when it comes to the disposition, joins in the conveyance; and, if he should refuse to join under article 4621, the district court, upon satisfactory proof that the conveyance would be advantageous to her interest, may grant her the permission to convey. To give the wife the management and control of the real estate, and not give her the real incidents and fruits of that control, might, in an ethical sense, appear contradictory; and though it has appeared to a great many in this state that the construction that, although the thing itself may be separate property, but that which grows out of it and is produced upon it and which makes property really beneficial is community, is an incongruous interpretation; but the Supreme Court of this state has placed the same upon what it has conceived a broader ground, as to the meaning of the old statute and the result of the community partnership, and the presumed labors of each between husband and wife. In the early case of De Blane v. Lynch, 23 Tex. 29, where it was held that crops grown upon the separate property of the wife, and by the labor of her slaves, were community property, the Supreme Court said:

"The principle which lies at the foundation of the whole system of community property is that whatever is acquired by the joint efforts of the husband and wife shall be their common property. * * * It is true that in a particular case satisfactory proof might be made that the wife contributed nothing to the acquisitions; or, on the other hand, that the acquisitions of property were owing wholly to the wife's industry. But from the very nature of the marriage relation the law cannot permit inquiries into such matters. The law therefore conclusively presumes that whatever is acquired, except by gift, devise, or descent, or by the exchange of one kind of property for another kind, is acquired by their mutual industry. If a crop is made by the labor of the wife's slaves, on the wife's land, it is community property, because the law presumes that the husband's skill or care contributed to its production; or that he, in some other way, contributed to the common acquisitions."

It may be that on account of the wife's management and control of her separate real estate the presumption that the husband's labor or skill contributed to the production of the crops grown thereupon might not prevail, but the presumption that he still contributes to the common acquisitions and the community partnership, in a general sense, of course, prevails, article 4622, as amended by the Legislature of 1913, still says that all property acquired by the husband or wife during marriage shall be deemed the common property and during the coverture may be disposed of by the husband only; and article 4621, as amended, still prescribes that the property acquired only by gift, devise, or descent, constitutes the separate property of each. Hence the status of the title of the common property, and of the separate property by gift, devise, or descent, we think under this statute continues to remain the same. It would have been easy for the Legislature to have said that the "increase" of separate real estate shall include the products grown upon the same without leaving it to a strained construction by the courts to abrogate the settled rule imbedded in the law by many decades of interpretation. The court of the Second district has in effect given the amended statute the same interpretation as we give it. Tannehill v. Tannehill, 171 S. W. 1050; Scott v. Scott, 170 S. W. 273.

[2] As to the issue whether the transaction constituted a gift, it is the law of this state that the question, whether particular property is separate, or community, must depend upon the existence or nonexistence of the facts, which by the rules of law give character to it, and not merely upon the stipulations of the parties that it shall belong to one class or the other. Kellett v. Trice, 95 Tex. 160, 66 S. W. 51. Justice Williams said in that case:

"It has been held in several cases that the husband and wife cannot, by their mere agreements, alter the character given to property by the law acting upon the facts under which it is acquired. Cox v. Miller, 54 Tex. 27; Green v. Ferguson, 62 Tex. 529."

He also said:

"It is true that, in the acquisition or afterwards, the husband may give to the wife all his interest in property, and thus, by gift, make it hers; but at last this would be true only because the facts defined in the law exist and the separate right is derived through a gift, the husband having full power over the community estate."

If the products of Mrs. McWhorter's farm are prima facie community property, the acquisition of title of the husband's half interest must have been a gift, otherwise the title remained in the community; and, if the record in this instance does not conclusively prove a gift, the trial court necessarily erred in his peremptory instruction.

"No gift of any goods or chattels shall be valid unless by deed or will, duly acknowledged or proven up and recorded, or unless actual possession shall have come to, and remained with, the donee or some one claiming under him." Article 3968, Vernon's Sayles' Rev. Civil Statutes.

This statute precludes symbolical or constructive possession; actual possession must come to, and remain with, the donee or some one claiming under him. Love v. Hudson, 24 Tex. Civ. App. 377, 59 S. W. 1127; Eldridge v. McDow, 132 S. W. 518. We are not deciding that acts of control and manifestations of ownership over articles in heavy bulk would not constitute actual possession, if the other elements, intention to give, and relinquishment by the donor of dominion over the property to the donee, are shown. It is elementary that an unexecuted parol promise to give is void. It is the fact of delivery and relinquishment of dominion that converts the unexecuted and revocable purpose to give into a complete gift. If the products of the farm, which are to be severed, constitute the community property, it cannot be doubted that at least, after severance, the husband had the management, control, and disposition of such products, and it is equally true that such products would be "chattels" within the statute quoted. Hence the intention of the husband to give, and the delivery by him into the actual possession of the wife, must be conclusively shown to take a case of this character from the jury.

In the case of Little v. Birdwell, 21 Tex. 609, 73 Am. Dec. 242, our Supreme Court, quoting from the Alabama Supreme Court, said:

"Verbal sales and gifts, between husband and wife, ought not to be admitted, unless on clear and satisfactory proof that the property was divested out of the vendor, and vested in the vendee."

It may be that the true rule in such cases is that such proof is that character of evidence, which, in order to be conclusive, leaves no room for ordinary minds to debate as to the inference to be deduced. Lord v. Insurance Co., 95 Tex. 216, 66 S. W. 290, 56 L. R. A. 596, 93 Am. St. Rep. 827, where a brother gave his sister an insurance policy. The jury in this case would have had the right to weigh the relationship of the parties, the fact that the wife, vitally interested in the litigation, is testifying on the main issue in the cause, and that the husband's testimony is neither offered nor its absence excused; and to further consider whether the arrangement or agreement testified to by her was merely an attempt to change the status of community into separate property, without including the idea of a gift, which would be void under the decisions cited and quoted from. When she informed her husband that if he would finance the crop and that she would superintend it, employ the boys to cultivate it, and reimburse him out of the crop, the crop to be hers, we are unable to say that such an agreement conclusively exhibits an intention to give—a pure benefaction upon the part of the husband—

even with the aid of the testimony that the increase of other separate property was considered her property; nor do we think that the testimony by her of her acts conclusively shows that the seed was actually delivered into the possession of the wife.

"A mere intention, or naked promise to give, without some act to pass the property, is not a gift. There exists the locus penitentiæ so long as the gift is incomplete and left imperfect in the mode and manner of making it. * * * The donor must part, not only with the possession, but with the dominion of the property." Chevallier v. Wilson, 1 Tex. p. 161.

[3] The courts of this state have established the principle that a case wholly dependent upon the uncorroborated testimony of a party interested in the litigation, though unopposed by other witnesses, is for the jury, and they have the right to weigh the credibility of the witness. Rayner v. Posey, 173 S. W. 249, and numerous cases cited, including one by the Supreme Court of the United States. There may be exceptions to this rule, but we believe the general rule would apply to the character of case manifested in this record.

The trial court erred in the peremptory instruction.

[4] The appellant also assigns error to the action of the court in permitting the testimony of Mrs. McWhorter, on the market value of the Sudan seed. The bill of exceptions we find as the basis of this assignment is one which exhibits testimony, in effect, that she had endeavored to keep posted as to the value of Sudan seed, and had been making investigations and inquiries with reference to the value, and had heard the matter "discussed," and believed that she knew as much about it as any lady could know. What the "discussions" were in regard to value—whether between parties offering to sell or purchase, witnessed by her first hand, or whether they were mere speculative opinions of others—is not shown on cross-examination. To pass upon a close question of qualification as presented by this bill is unnecessary, for the reason that a cross-examination of the witness (not shown in the bill) discloses that all she knew about the market value is what she heard other people say, which is the serious complaint of appellant, but with no further objection to the testimony, or motion to strike, presented. If the witness had no personal knowledge of the value of the seed, but her opinion was based merely upon what others informed her as to the value of the same, the testimony is based upon the unaccredited statements of others, and is hearsay. Such testimony with such basis is improper. Railway v. Maddox, 75 Tex. 305, 12 S. W. 815; Railway v. Arnett, 40 Tex. Civ. App. 78, 88 S. W. 448; Railway v. Crowley (Civ. App.) 86 S. W. 342; Railway Co. v. Hughes, 44 Tex. Civ. App. 137, 98 S. W. 410; Wigmore on Evidence, vol. 1, § 719, pp. 915, 916.

[5] The testimony of the witness Corey, on market value, assailed by appellant, was improper. We interpret his testimony of value as having been based upon the value of seed which had passed inspection and was entitled to admission in the Sudan Grass Seed Association, under the rules of that association, which he said was worth 60 cents per pound. This record does not show that this seed had gained that standard. He further said, on cross-examination, that he was not familiar with the situation at that time, and that he had not known of any sales, and had been too busy to give that matter any thought.

We are not holding the testimony improper because he had no personal knowledge of sales; a witness may acquire some knowledge of market value from competent sources of information without direct knowledge and without the charge of hearsay. Wigmore on Evidence, supra. But this testimony is too weak to be considered.

The solution of the questions in regard to the inadequacy of the pleadings and the burden of proof, as bearing upon the issue of the gift by the husband to the wife, in violation of the rights of creditors, probably becomes academic in view of the reversal, as the record upon another trial, and the case by its development, will probably be different.

The cause is reversed and remanded for a new trial.