**DENDINGER v. MARTIN et al.   (No. 1648.)**

(Court of Civil Appeals of Texas. Amarillo. April 8, 1920. Rehearing Denied May 19, 1920.)

1. **Husband and wife** ⊜⇒138(2)—**Evidence held to show husband was agent of wife in sale of land.**

In an action by a wife to cancel a deed executed by her and her husband, evidence *held* sufficient to sustain a finding that the husband acted as agent for the wife in negotiating the sale.

2. **Acknowledgment** ⊜⇒60—**Evidence held to show notary public took wife's acknowledgment as required by law.**

In an action by a wife to cancel a deed executed by her and her husband, evidence *held* sufficient to support a finding that notary public took plaintiff's acknowledgment as required by law and as stated in the certificate.

3. **Vendor and purchaser** ⊜⇒44—**Evidence held to show agreement to accept land notes instead of cash.**

In an action by a wife to cancel a deed executed by her and her husband, evidence *held* sufficient to show an agreement by plaintiff for the sale of the property for certain land notes and that the basis of the sale was not cash.

4. **Evidence** ⊜⇒589—**Jury need not believe uncontradicted testimony of parties.**

In an action by a wife to cancel a deed executed by her and her husband, who was made a party defendant, the court and jury were not bound to acknowledge the testimony of the husband and wife, although uncontradicted.

5. **Evidence** ⊜⇒248(1)—**Statements of agent admissible on issue of consideration for conveyance of land.**

In an action by a wife to cancel a deed executed by her and her husband, if the husband was agent for the wife in negotiating the sale, his letters and statements in negotiating the sale were admissible to show that certain land notes delivered were exchanged for the land in question; plaintiff claiming that the agreement was for cash, and that the land notes were given in payment for other property.

6. **Evidence** ⊜⇒222(6)—**Statements and letters admissible to show consideration for deed was paid.**

In an action by a wife to cancel a deed executed by her and her defendant husband, the latter negotiating the sale for her, and the other defendants filing a cross-action to quiet title against the husband and wife, statements and letters of the husband were admissible, at least against him, where they tended to show that certain land notes were delivered in payment of the land in question, and not in payment of other land, as contended by plaintiff.

7. **Trial** ⊜⇒255(4)—**General objection to evidence admissible against one insufficient in absence of limiting instruction.**

Where evidence, which is admissible as against one person, is introduced, no complaint can be made by other persons of its admission, where no instructions as to the conditions or limits upon which the evidence might be considered were requested.

8. **Appeal and error** ⊜⇒690(4)—**Bill of exceptions should set out evidence to show objection to testimony was well taken.**

Under district and county court rule 58 (142 S. W. xxi), a bill of exception taken to the overruling of an objection to testimony should set out so much of the evidence as is necessary to show that the objection to the testimony is well taken.

---

⊜⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**9. Appeal and error ⊝232(2)—No reversal for improper admission of evidence over objection not properly called to attention of court.**

A case will not be reversed for admission of self-serving and hearsay statements, where the objection to the evidence was, "because it was not shown that she (appellant) had any notice or knowledge of said transactions and conversations and could not bind her"; objections being so made and presented that the real reason why the testimony was objectionable was not called to the attention of or considered by the court.

**10. Trial ⊝350(2)—Submission of ultimate controlling issues sufficient.**

No complaint can be made of the refusal of the court to submit certain special issues, where it submitted the ultimate controlling issues, and the answers necessarily answered the more detailed subordinate issues requested.

**11. Cancellation of instruments ⊝52—Conflict in jury's answers to special issues not shown.**

Answers by the jury, in an action to cancel a deed, to questions whether or not there was a delivery of land notes as consideration, *held* not in any real conflict.

**12. Husband and wife ⊝174—Married woman collecting rents and asserting right to possession of premises liable in tort.**

A married woman unlawfully collecting rents on lands in person, and asserting her rights personally to hold and maintain possession, is guilty of a tort, and is liable in damages.

Appeal from District Court, Dallas County; W. F. Whitehurst, Judge.

Action by Mrs. Lula Dendinger against Mrs. M. A. Martin and others. Judgment for defendants, and plaintiff appeals. Affirmed.

C. M. Smithdeal, of Dallas, for appellant.
Read, Lowrance & Bates and W. J. Rutledge, Jr., all of Dallas, for appellees.

BOYCE, J. The appellant, Mrs. Lula Dendinger, brought this suit to cancel a certain deed executed by her and her husband, J. R. Dendinger, dated February 9, 1911, whereby they conveyed to A. J. Martin certain property in the city of Dallas, including their homestead, which belonged to the community, and other property which belonged to Mrs. Dendinger in her own right. The defendants in the suit were Mrs. M. A. Martin, the surviving wife of the said A. J. Martin, deceased, Mrs. Lela Wooley, daughter and heir of A. J. Martin, Albert Wooley, her husband, H. Hollinsworth, and J. R. Dendinger, plaintiff's husband, who, it was alleged, refused to join her in the suit. The case was submitted to a jury on special issues, and judgment rendered on the verdict of the jury against the plaintiff, from which judgment she prosecutes this appeal.

The facts pleaded by the plaintiff and defendants are voluminous and complicated in their details. A statement of the general result of the allegations, however, is all that is necessary to a decision of the assignments presented.

Plaintiff alleged that, shortly before the execution of the deed in question, A. J. Martin offered her $12,000 cash for the property described in the deed; that she did not accept the offer, but told him she would consider it; that soon thereafter her husband induced her to sign and acknowledge said deed on representations that the said Martin could then go ahead and have the title examined, and there would be no delay in closing the transaction in the event she decided to sell; that she did not read the deed, but thought it recited a consideration of $12,000, and relied on her husband's representations as to its contents and the purpose of its execution; that the deed in fact recited a consideration of one dollar, and the assumption by the said A. J. Martin of the payment of two notes which constituted a lien on said property; that the certificate of acknowledgment to said deed was false, in that she was not examined privily and apart from her husband, and such instrument was not explained to her by the officer taking the acknowledgment; that she did not authorize her husband to deliver the deed, and if it was delivered such delivery was without her authority; that she received no consideration therefor, and a fraud was perpetrated upon her in the delivery and record of the deed; that she later learned that the deed had been delivered to Martin, and subsequently informed him that she had decided not to sell the property, and he agreed to return the deed to her, and it was subsequently reported to her that the deed was lost; that she did not learn of the record of the deed until May, 1916; that the recording of the deed cast a cloud upon her title. Wherefore she prayed that the deed be canceled and her title quieted. It is not necessary to make any statement as to the claim of H. Hollinsworth, since no one is complaining of the judgment against him.

Mrs. M. A. Martin and Mrs. Lela Wooley and her husband answered that the deed was executed with the formalities required by law; that the consideration agreed to be paid for said land, in addition to the assumption of the notes constituting a lien thereon, was $20,000 in notes secured by vendor's lien on land in Bowie county; that Mrs. Dendinger delivered the deed to her husband as her agent, and that he delivered it to the said A. J. Martin, who in turn delivered the said $20,000 Bowie county land notes to the said J. R. Dendinger for Mrs. Dendinger; that at the time of such exchange said A. J. Martin leased said Dallas property to J. R. Dendinger for $150 per month, and settlement of rents was thereafter made to April 1, 1916;

⊝For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

that Mrs. Dendinger and her husband have since April 1, 1916, been occupying and collecting rents on the premises, and are liable as joint tort-feasors for the rental value of said property at the rate of $100 per month. Certain facts, not necessary to specifically set out, are alleged in support of a plea of estoppel against the plaintiff. Said defendants further alleged that they, in good faith, expended certain sums of money in payment of taxes and in discharge of liens and in the erection of improvements on said property. They prayed that their title to said property be quieted, and that they have judgment against plaintiff and her husband for rents; and in the alternative, in the event plaintiff should recover said property, that they have judgment for the value of the Bowie county land notes and the amounts expended on said Dallas property for improvements and in payment of taxes, etc.

The defendant J. R. Dendinger answered that he was not authorized to sell the property for plaintiff; that the deed was delivered to Martin for examination only; that Martin agreed to return said deed, but later informed him that it was lost; that he received the Bowie county land notes in exchange for some Ft. Worth property, which he conveyed to the said A. J. Martin; that in closing up the agreement for exchange of such properties, and the modifications thereof later agreed to, it was finally agreed between Dendinger and the said Martin, after the said Dendinger had discovered that the deed to the Dallas property was still in possession of the said Martin and had been recorded, that the said A. J. Martin should hold the deed to the said Dallas property to secure the payment of certain indebtedness which Dendinger owed Martin, growing out of the exchange of the Ft. Worth property for the Bowie county land notes; that this agreement for retention of the deed by Martin was made without authority from Mrs. Dendinger, and that he and the said Martin colluded together to keep Mrs. Dendinger from acquiring any knowledge of this transaction; that it later developed that he did not owe Martin anything on the exchange of the Ft. Worth property.

More than 30 special issues were submitted to the jury. We copy the following, with their answers, as being the only ones necessary to be referred to in the disposition of the appeal:

"(1) Do you find and believe from the evidence that just prior to February 9, 1911, the plaintiff, Mrs. Lula Dendinger, authorized her husband, J. R. Dendinger, to negotiate as her agent for the sale of the property in controversy to A. J. Martin? Answer: Yes.

"(2) Do you find and believe from the evidence that the plaintiff, Mrs. Lula Dendinger, agreed to accept as consideration for conveyance of the property described in the deed of February 9, 1911, the $20,000 vendor's lien notes on the Bowie county property? Answer: Yes.

"(3) Do you find and believe from the evidence that the officer taking the acknowledgment of Mrs. Lula Dendinger to the deed of February 9, 1911, to Andrew J. Martin, took such acknowledgment in accordance with the certificate in said deed? Answer: Yes.

"(4) Do you find and believe from the evidence that A. J. Martin entered into an agreement with J. R. Dendinger to withhold from the plaintiff, Mrs. Lula Dendinger, information as to the real consideration for the deed so executed? Answer: No."

"(6) Do you find and believe from the evidence that A. J. Martin or his agent delivered to J. R. Dendinger the $20,000 in vendor's lien notes as payment for the property described in the deed of February 9, 1911? Answer: Yes.

"(7) Do you find and believe from the evidence that the plaintiff, Mrs. J. R. Dendinger, authorized or directed her husband, the said J. R. Dendinger, to receive for her the said $20,000 in vendor's lien notes, in payment for the property described in the deed dated February 9, 1911? Answer: Yes.

"(8) Do you find and believe from the evidence that Mrs. Lula Dendinger, plaintiff, authorized J. R. Dendinger to deliver the deed dated February 9, 1911, to said A. J. Martin, for the purpose of passing the title to said property? Answer: Yes.

"(9) Do you find and believe from the evidence that the said J. R. Dendinger delivered the deed dated February 9, 1911, in consideration of the $20,000 vendor's lien notes, to the said A. J. Martin or his agent? Answer: Yes."

"(14) What was the reasonable rental value of said property since April 1, 1916, up to and including the present time? Answer: $3,200.

"(15) Did A. J. Martin agree to take the twelve houses in Fostepco Heights addition in Ft. Worth, Tex., in trade for the $20,000 in vendor's lien notes against the Bowie county land? Answer: No."

"(22) [The issues from 15 to 22 are in relation to the alleged exchange of the Ft. Worth property for the Bowie county land notes.] Did A. J. Martin convey and deliver to J. R. Dendinger the $20,000 vendor's lien notes on the Bowie county land? Answer: No."

[1-4] It will not be necessary to consider the assignments, of which there are 25, seriatim, but they may be conveniently considered and disposed of in groups. We will first consider those assignments (the 6th, 15th, 16th, 17th, 18th, 19th, 20th, 21st, 23d, and 24th), which present in various ways, by asserting error in the refusal to instruct the jury peremptorily in appellant's favor, or in the submission of the foregoing issues to the jury, or in the refusal to set aside the verdict, the contention that the findings of the jury are either contrary to, or unsupported by, the evidence, because (1) the evidence is insufficient to show any authority on the part of J. R. Dendinger to act for Mrs. Dendinger in the delivery of the deed, but, on the contrary, that the undisputed evidence is that he was without such authority, and that the said J. R. Dendinger and A. J. Martin were acting in collusion, in hostility to the interests of the wife; (2) the

evidence is insufficient to show any agreement by plaintiffs for the sale of the Dallas property for the $20,000 Bowie county land notes, but, on the contrary, the undisputed evidence shows that the only negotiations looking to an agreement between the plaintiff and the said A. J. Martin were on the basis of the sale of said premises for $12,000 cash; (3) the uncontradicted evidence shows that the notary public did not take plaintiff's acknowledgment as required by law and as stated in the certificate.

The appellant and her husband testified to the facts substantially as pleaded by them, as above stated, and under the foregoing assignments it is contended that there was no sufficient evidence to warrant any other conclusion.

The testimony in behalf of the appellees on these issues consisted of the following: The testimony of Alex. Martin, brother of A. J. Martin, to the effect that J. R. Dendinger took him and A. J. Martin to look at the Dallas property shortly before the execution of the deed; that Mrs. Dendinger was present during part of the time when the property was being inspected and the trade discussed; that the proposition being talked about was the exchange of the property for the notes on the Bowie county land; that Mrs. Dendinger was present during a part of the discussion of the proposed exchange, and could have heard it. The testimony of the officers of the First State Bank of Clarksville and others, by which it was shown that J. R. Dendinger transmitted the deed to the Dallas property to the Clarksville bank, to be delivered to A. J. Martin, upon delivery to the bank for transmission, to Dendinger, of the $20,000 notes on the Bowie county land, and that the exchange was consummated in accordance with such instructions from J. R. Dendinger. The testimony of J. S. Durham, to the effect that in April, 1916, he went to inspect the Dallas property, for the purpose of renewing a loan thereon; that at this time he saw Mrs. Dendinger on the premises, and asked her if "that was the Martin property"; to which she replied that it was; and, after the witness had explained his business to her, she said: "This is the Martin property. We have sold it, but lost all we got out of it, and I have lived here a long time and I am going to stay. There is some other property in connection with it [referring to the home where they were living], but I don't care anything about that, but this place I am going to stay in." With reference to the taking of the acknowledgment to the deed the appellant and her husband testified that the officer did not explain the instrument to Mrs. Dendinger, and the acknowledgment was taken in the presence of the husband. The officer testified that he took the acknowledgment separate and apart from the husband, and explained the instrument to Mrs. Dendinger, in accordance with the certificate. In this connection he tes-

tified, however: "I would say I have no independent recollection of this particular case, you understand, but that is the rule I always follow." We think the facts warranted the submission of the issues to the jury, and are sufficient to sustain their answers thereto. The appellant and her husband were both interested in the result of the suit. The court and the jury were not bound to accept their testimony, even if it were uncontradicted. Rayner v. Posey, 173 S. W. 249; Burleson v. Tinnin, 100 S. W. 351; First National Bank v. McWhorter, 179 S. W. 1148. But it cannot be said that their testimony was uncontradicted. The fact of the acknowledgment and delivery of the deed, taken in connection with the evidence we have referred to above, furnishes in any event, a sufficient contradiction of their theory of the case to make an issue of fact.

[5-7] The first four assignments complain of the introduction of the letters written and statements made by J. R. Dendinger in carrying out the exchange of the deed to the Dallas property for the Bowie county land notes, referred to in our consideration of the preceding assignments. Appellant objected to the introduction of this evidence on the ground that it had not been shown that Mrs. Dendinger knew of such correspondence and statements, nor that J. R. Dendinger was her agent, and in the absence of such showing the acts and statements of the said Dendinger would not be admissible in evidence against her. We think the evidence, aside from the statements made in the testimony objected to, is sufficient to raise an issue of fact as to whether J. R. Dendinger was the agent for his wife in these matters; and, if he were her agent, the testimony would be admissible on the issue as to whether the $20,000 Bowie county land notes were in fact exchanged for the Dallas property. The testimony was also admissible in any event, as against J. R. Dendinger, on appellee's cross-action. The appellant, on either theory of the admissibility of such testimony, would have been entitled to instructions to the jury defining the conditions and limits upon which the evidence might be considered as against her; but no such instructions were requested. The assignments complaining generally of the admission of the evidence under such circumstances are not well taken.

[8, 9] By the fifth assignment complaint is made of the admission in evidence of declarations made by A. J. Martin to D. H. Taylor, to the effect that "A. J. Martin told him (the witness) about this Dallas property; that he told him that Mr. Dendinger wanted to buy the Dallas property back, and that he (Martin) had agreed to sell him the Dallas property for the Ft. Worth property if he would clear the Ft. Worth property of all the liens and incumbrances against it; but Dendinger had failed to do that, was unable to do it, or had refused to do it; he hadn't done it, and

consequently he was going to keep the Dallas property, and the trade was all off because Dendinger had failed to clear the Ft. Worth property of incumbrances." The appellant objected to this evidence "because it was not shown that she had any notice or knowledge of said transactions and conversations and could not bind her." The bill does not set out any of the circumstances under which these statements were made. The statement under the assignment does not refer us to the statement of facts from which we might obtain such information. The statement of facts itself does not contain an index. Under the rules the bill of exception should set out so much of the evidence as is necessary to show that the objection urged to the testimony is well taken. District & County Court Rule 58 (142 S. W. xxi). "It has often been held that the recitation of facts in objections to testimony must be verified by other parts of the bill in order to require consideration on appeal." C., R. I. & G. Ry. Co. v. Thompson, 58 Tex. Civ. App. 134, 124 S. W. 144; Clark v. State, 189 S. W. 85; Stine Oil & Gas Co. v. English, 185 S. W. 1012. If the testimony were objectionable it would be because it was hearsay, and the unsworn, self-serving declarations of the deceased. Lester v. Hutson, 167 S. W. 329, § 14. As we have seen, this was not the objection urged. The assignment is briefed in connection with the first four assignments, and only the authorities cited in support of said prior assignments are referred to in this assignment. If the testimony was admitted under such circumstances as to be objectionable for the reasons stated in the opinion in the case of Lester v. Hutson, supra, it thus appears probable that the objections were so made and presented as that the trial court was left under the impression that the testimony and objections were of the same general character as that referred to in the said first four assignments; in fact, it is so briefed by both parties on this appeal, and that the real reason why the testimony might be objectionable was not called to the attention of, or considered by, the court. Under these circumstances we do not think we ought to reverse the case on this assignment, even if an examination of the statement of facts should convince us that the testimony was inadmissible for the reason that the statements repeated were self-serving and hearsay. Davis v. Mills, 63 Tex. Civ. App. 359, 133 S. W. 1067; District and County Court Rule No. 58.

[10] The 7th, 8th, 9th, 10th, 11th, 12th, 13th, and 14th assignments complain of the refusal of the court to submit certain special issues. We do not think the court committed any reversible error in this respect. In our opinion, the ultimate controlling issues were sufficiently submitted; an answer to these issues so submitted necessarily answered the more detailed subordinate issues requested by the appellant. Our views on this matter have been heretofore expressed in the case of Texas' Employers' Insurance Co. v. Downing, 218 S. W. 121, §§ 14–16.

[11] It is claimed under the twentieth assignment that there is a conflict in the findings of the jury in their responses to the sixth and twenty-second issues. We do not think there was any real conflict in these answers. There was no dispute as to the fact that the $20,000 Bowie county notes were in fact delivered to J. R. Dendinger. The controversy was as to whether they were delivered in payment for the Dallas property, as claimed by appellees, or for the Ft. Worth property, as claimed by the Dendingers. Issue No. 6 was presented in connection with the submission of other issues intended to develop the conclusion of the jury as to the contentions of the parties in reference to the Dallas property. Issue No. 22 followed a series of questions as to whether there was an agreement for the exchange of the Ft. Worth property for the Bowie county land notes. It seems apparent that the jury meant to find that the $20,000 Bowie county land notes were delivered to Dendinger in pursuance to the agreement for exchange of the notes for the Dallas property—that is the specific finding in the answer to the sixth issue—and that said notes were not delivered to him under the alleged agreement for exchange for the Ft. Worth property.

[12] It is contended under the 25th assignment that the judgment for damages against Mrs. Dendinger, enforceable against her separate property, is erroneous. These damages were awarded, on the verdict of the jury, on account of the use and occupancy of the premises after April 1, 1916. The facts show that Mrs. Dendinger had been collecting the rents on part of the property in person, and asserting her right personally to hold and maintain possession of the premises. A married woman is liable for her torts, and the recovery of damages for the wrongful use and occupancy of the premises is a recovery in tort. We think this assignment should be overruled. The cases of Taylor v. Stephens, 17 Tex. Civ. App. 36, 42 S. W. 1048, and Magerstadt v. Lambert, 39 Tex. Civ. App. 472, 87 S. W. 1060, are directly in point and sustain our conclusion.

The judgment of the district court will be affirmed.